STATE OF INDIANA )
) SS:
COUNTY OF MONROE )

MONROE CIRCUIT COURT

CAUSE NO.: 53C06-2310-CT-002303

BEVERLEY C. SALAHUDDIN )
THOMPSON, )
)
        Plaintiff, )
)
    vs. )
)
THE TRUSTEES OF INDIANA )
UNIVERSITY, GUNNAR ORTLIEB, in his )
official capacity, BRAD SEIFERS, in )
his official capacity, W. QUINN BUCKNER, )
in his official capacity, CINDY LUCCHESE, )
in her official capacity, CATHY LANGHAM, )
in her official capacity, MICHAEL J. MIRRO, )
in his official capacity, JEREMY A. MORRIS, )
in his official capacity, J. TIMOTHY )
MORRIS, in his official capacity, KYLE S. )
SEIBERT, in his official capacity, DONNA )
B. SPEARS, in her official capacity, and )
VIVIAN WINSTON, in her official capacity, )
KWAN J. WALLACE, in his official capacity, )
and JOSHUA A. EAL, in his official capacity, )
)
        Defendants. )

## **COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

Plaintiff Beverley C. Salahuddin Thompson, by counsel, for her *Complaint for Damages and Demand for Trial By Jury* ("Complaint"), states as follows:

## I.    **INTRODUCTION**

1.    This is an action brought by Beverley C. Salahuddin Thompson ("Ms. Thompson") against Defendants The Trustees of Indiana University ("IU"), Gunnar Ortlieb, in his official capacity, Brad Seifers, in his official capacity, W. Quinn Buckner, in his official capacity, Cindy Lucchese, in her official capacity, Michael J. Mirro, in his official

*Plaintiff Beverley C. Salahuddin Thompson's Complaint for Damages and Demand for Trial by Jury*

capacity, Jeremy A. Morris, in his official capacity, J. Timothy Morris, in his official capacity, Kyle S. Seibert, in his official capacity, Donna B. Spears, in her official capacity, Vivian Winston, in her official capacity, Kwan J. Wallace, in his official capacity, and Joshua A. Eal in his official capacity. Ms. Thompson was a student at IU until her graduation in December of 2021. Defendant IU violated Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX") and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.* ("Title VI"), by discriminating against Ms. Thompson on the basis of her race, African American, and her female gender.

2.      This action is also brought by Ms. Thompson against Defendants Gunnar Ortlieb, Brad Seifers, W. Quinn Buckner, Cindy Lucchese, Michael J. Mirro, Jeremy A. Morris, J. Timothy Morris, Kyle S. Seibert, Donna B. Spears, Vivian Winston, Kwan J. Wallace, and Joshua A. Eal for a violation of her constitutional rights under Section 1983.

## II.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.      Ms. Thompson first notified IU of potential tort claims by a letter dated April 1, 2022. IU replied on April 5, 2022 by disavowing any inappropriate actions on its part.

4.      On April 19, 2022, Ms. Thompson sent her Notice of Tort Claim to the Office of the Attorney General and the Indiana Political Subdivision Risk Management Commission.

5.      Although it was not required, Ms. Thompson additionally filed a grievance with the U.S. Department of Education's Office for Civil Rights, outlining her claims under both Title IX and Title VI.

6.      On October 17, 2022, the OCR completed its investigation and issued Ms. Thompson a notice of her right to sue.

*Plaintiff Beverley C. Salahuddin Thompson's Complaint for Damages and Demand for Trial by Jury*

### III.   VENUE

7.     At all times relevant to this Complaint, Ms. Thompson was a resident of Bloomington in Monroe County, Indiana.

8.     Indiana University is a state-run institution of higher education, located in Bloomington, Monroe County, Indiana.

9.     Defendant the Trustees of Indiana University is a body politic and under that name can be sued pursuant to Indiana Code § 21-20-2-2.

10.     Ms. Thompson was a student at Indiana University in Monroe County, Indiana.

11.     The unlawful practices alleged below arose in Monroe County, Indiana.

12.     This cause of action arose in Bloomington, Indiana, which is located in Monroe County.

### IV.   PLAINTIFF

13.     Ms. Thompson is a citizen of the United States, and was, during all times relevant to this Complaint, a resident of Bloomington in Monroe County, Indiana.

14.     Ms. Thompson's race is African American.

15.     Ms. Thompson's gender is female.

### V.   DEFENDANTS

16.     Defendant the Trustees of Indiana University is a body politic and under that name can be sued pursuant to Indiana Code § 21-20-2-2.

17.     IU employs uniformed police officers, known as Indiana University Police Department "IUPD."

*Plaintiff Beverley C. Salahuddin Thompson's Complaint for Damages and Demand for Trial by Jury*

18.     Specifically, IU is responsible for "appoint[ing] police officers for the state educational institution for which the board is responsible" as well as "prescrib[ing] duties and direct[ing] the conduct of the appointed police officers" under Ind. Code § 21-39-4-2.

19.     Defendant Gunnar Ortlieb is a police officer with the Indiana University Police Department. At all times relevant, he engaged in the performance of his duties within Monroe County.

20.     Defendant Brad Seifers is IUPD's Deputy Superintendent and is currently the Interim Division Chief for IUPD's Bloomington Division. At all times relevant, he engaged in the performance of his duties within Monroe County.

21.     Non-defendant Jill Lees served as Chief of Police for IUPD's Bloomington Division until approximately September of 2023.

22.     Defendant W. Quinn Buckner is the Chair of the Board of Trustees of Indiana University and a Trustee of Indiana University who at all times relevant engaged in the performance of his duties within Monroe County.

23.     Defendant Cindy Lucchese is the Vice Chair for the Board of Trustees of Indiana University and a Trustee of Indiana University who at all times relevant engaged in the performance of her duties within Monroe County.

24.     Defendant Cathy Langham is a Trustee of Indiana University who at all times relevant engaged in the performance of her duties within Monroe County.

25.     Defendant Michael J. Mirro is a Trustee of Indiana University who at all times relevant engaged in the performance of his duties within Monroe County.

*Plaintiff Beverley C. Salahuddin Thompson's Complaint for Damages and Demand for Trial by Jury*

26.     Defendant Jeremy A. Morris is a Trustee of Indiana University who at all times relevant engaged in the performance of his duties within Monroe County.

27.     Defendant J. Timothy Morris is a Trustee of Indiana University who at all times relevant engaged in the performance of his duties within Monroe County.

28.     Defendant Kyle S. Seibert is a Trustee of Indiana University who at all times relevant engaged in the performance of his duties within Monroe County.

29.     Defendant Donna B. Spears is a Trustee of Indiana University who at all times relevant engaged in the performance of her duties within Monroe County.

30.     Defendant Vivian Winston is a Trustee of Indiana University who at all times relevant engaged in the performance of her duties within Monroe County.

31.     Kwan J. Wallace is the Assistant Director for Academic Misconduct for the Office of Student Conduct at Indiana University Bloomington who at all times relevant engaged in the performance of his duties within Monroe County.

32.     Joshua A. Eal is the Sexual Misconduct Investigator at Indiana University Bloomington who at all times relevant engaged in the performance of his duties within Monroe County.

33.     At all times relevant to this action, Ms. Thompson was a student at Indiana University.

*Plaintiff Beverley C. Salahuddin Thompson's Complaint for Damages and Demand for Trial by Jury*

## VI.   <u>STATEMENT OF FACTS</u>

**A. In October 2021, Ms. Thompson was a victim of sexual assault after she had been given a date rape drug without consent.**

34.     Around 5:30 am on October 13, 2021, an officer of the Indiana University Police Department ("IUPD"), Gunnar Ortlieb, conducted a welfare check in response to a report of a partially nude woman on campus.

35.     Mr. Ortlieb never located the individual who called in a request for the welfare check.

36.     Mr. Ortlieb found Ms. Thompson disoriented, unaware of where she was, unable to remember the previous evening, and wearing only a jacket.

37.     Mr. Ortlieb contacted EMS, who transferred Ms. Thompson to IU Health Bloomington Hospital ("IU Health").

38.     Both EMS and the staff at IU Health believed Ms. Thompson had been given a "date rape drug" without her consent and then was sexually assaulted.

**B. Despite a stellar academic record and evidence showing she had been a victim of a date rape drug and rape, IU charged Ms. Thompson with three violations of the Code of Student Rights, Responsibilities, and Conduct.**

39.      Ms. Thompson, then a twenty-one-year-old black woman with a 3.778 GPA planning to graduate a semester early and attend law school, was unquestionably the victim in this series of events.

40.     Nonetheless, IU charged Ms. Thompson with three violations of the Code of Student Rights, Responsibilities, and Conduct, including for lewd, indecent or obscene conduct; personal misconduct that endangers self, others in the University community or

academic process, and unauthorized possession and use of alcoholic beverages. IU notified Ms. Thompson of these violations via an October 21, 2021 letter.

41.     At this point, Ms. Thompson was still recovering both physically and mentally from the trauma of the horrific assault that left her semi-conscious on the IU Bloomington campus.

42.     Learning that IU was charging her—the victim of the crime—with violations of various IU codes significantly increased Ms. Thompson's trauma and stress.

**C. Despite being directly informed of the sexual assault, IU still required Ms. Thompson to attend a hearing unless she allowed IUPD to investigate the assault and attended an alcohol treatment program.**

43.     In October of 2021, Ms. Thompson's counsel contacted IU's then-General Counsel and IU's Vice Provost for Student Affairs and Dean of Students and informed them that Ms. Thompson was a victim of sexual assault.

44.     She further explained that requiring Ms. Thompson to participate in a Judicial Conference would be traumatizing for her as a recent crime victim, particularly as Ms. Thompson was eager to graduate early and attend law school.

45.     Ms. Thompson's counsel offered to provide testimony from medical experts to support Ms. Thompson's assertions that she had been drugged and raped.

46.     Ms. Thompson's counsel also asked to delay the Judicial Conference to allow time to provide IU with verification from IU Health that she had been given a drug without her consent and sexually assaulted.

47.     Despite this significant evidence showing that Ms. Thompson had been drugged and raped, Defendant Kwan J. Wallace and Defendant Joshua A. Eal insisted that

Ms. Thompson attend the Judicial Conference during which she would be forced to re-live and recount her sexual trauma.

48.     Mr. Wallace and Mr. Eal furthermore denied Ms. Thompson and her counsel access to any of the relevant documents mentioned in their October 21, 2021 letter ahead of the Judicial Conference. When they finally were provided access, they were prevented from making copies or taking photos of such documents under threat of being criminally charged by IUPD if any photos or copies were made.

49.     At the beginning of the Judicial Conference, Mr. Kwan and Mr. Eal forced Ms. Thompson to disclose what had occurred when she was sexually assaulted. Ms. Thompson also disclosed during the Judicial Conference that a medical-forensic examination had been conducted to collect evidence of a sexual assault. Her assault kit was anonymous.

50.     On Ms. Thompson's request for Mr. Kwan and Mr. Eal to then dismiss the disciplinary charges, Mr. Kwan and Mr. Eal refused and instead offered a pardon to Ms. Thompson through its amnesty process, but this process was improper given that Ms. Thompson had not violated the of the Code of Student Rights, Responsibilities, and Conduct.

51.     Specifically, Ms. Thompson had no control over where her body was placed after she was drugged and sexually assaulted, nor could she control what she was wearing after being attacked. She was the victim.

52.     Mr. Kwan and Mr. Eal also claimed Ms. Thompson had not been given a "date rape drug" because her "drug test was negative." In fact, no date rape drug test had been administered—rather a test for other common illicit drugs such as heroin, cocaine, and similar drugs was conducted and was negative.

53.    IU Health told Ms. Thompson that no test for any "date rape drugs" had been conducted as a matter of hospital policy based of the short half-life of such date rape drugs and IU Health needs to know what date rape drugs to test for since new date rape drugs continue to emerge.

54.    Nonetheless, Mr. Kwan and Mr. Eal maintained IU's position that Ms. Thompson was not drugged.

55.    Mr. Kwan and Mr. Eal continued to try to discredit, disregard, berate, humiliate, harass, and/or otherwise discriminate against Ms. Thompson.

56.    Further, Mr. Kwan and Mr. Eal refused to dismiss the charges against Ms. Thompson unless she allowed IUPD, rather than outside police, to investigate her sexual assault.

57.    Mr. Kwan and Mr. Eal also conditioned IU's offer of amnesty to Ms. Thompson on her participation in an alcohol treatment program based on her blood alcohol content that IUPD had obtained by coercing IU Health to violate HIPAA.

58.    Mr. Kwan and Mr. Eal told Ms. Thompson that her personal physician would process her sexual assault kit, which was false.

59.    Before the end of the Judicial Conference, Ms. Thompson confirmed in writing that she did not consent to IU's handling her sexual assault claim.

**D. IU lacked any reasonable justification for its refusal to dismiss charges, its insistence on IUPD investigating the sexual assault, or its requirement that Ms. Thompson attend an alcohol treatment program.**

60.    Mr. Kwan and Mr. Eal justified these irrational demands by asserting it wanted to ensure that students like Ms. Thompson succeed at IU.

61.     However, such a claim directly contradicts that Ms. Thompson had been on track to graduate two months after this incident, a full semester early, with a 3.778 GPA with no violations or other blemishes on her student record.

62.     IU admitted it had not examined her student file before the Judicial Conference.

63.     IU would not have taken such extreme steps to penalize the victim of a crime had she been white or male.

64.     Indeed, no rational explanation for IU's unlawful treatment of Ms. Thompson exists other than a discriminatory one.

65.     From the outset, IU's treatment of Ms. Thompson reflected its discriminatory beliefs that because of her color, race, and/or gender, she must be a criminal, the wrongdoer, or at least partially responsible for what happened to her.

66.     Because of Ms. Thompson's race, gender, and/or color, IU further assumed that she must have done something to deserve or invite the attack.

**E. IU has continued to harm Ms. Thompson by failing to provide her with the bodycam footage from the initial welfare check and trip to the hospital as well as refusing to turn over the sexual assault kit to the Indiana State Police.**

67.     Although IU eventually dismissed the charges against Ms. Thompson, it did so after causing her significant harm.

68.     In addition, IU violated Indiana's Access to Public Records laws by refusing to allow Ms. Thompson's counsel to view the bodycam footage from the initial welfare check and trip to the hospital.

*Plaintiff Beverley C. Salahuddin Thompson's Complaint for Damages and Demand for Trial by Jury*

69.     IU also refused to surrender to the Indiana State Police Ms. Thompson's sexual assault kit and any surveillance videos of the location where Ms. Thompson was found after the attack.

70.     Ms. Thompson repeatedly told IU she does not want IU investigating the sexual assault internally and wanted the Indiana State Police to investigate this heinous crime.

71.     However, IU continues to impede the investigation.

72.     On information and belief, IUPD has yet to investigate the sexual assault of Ms. Thompson despite multiple news reports in October and early November 2021 of high incidents of sexual assault on the Bloomington campus of Indiana University.

73.     Indeed, on December 9, 2021, Jennifer Kincaid, IU's Title IX coordinator stated, "We know the reports [of rape] are much higher this semester."[1]

74.     Finally, although Ms. Thompson's rape kit was supposed to be confidential, IU clearly breached her confidentiality and labeled the results of this sexual assault kit with her personal identifying information.

75.     At all times, Ms. Thompson or her counsel fully apprised IU of this treatment of Ms. Thompson.

---

[1] Max Lewis, *'It is just scary': IU Bloomington seeing significant increase in rapes reported*, CBS4 NEWS, https://cbs4indy.com/news/it-is-just-scary-iu-bloomington-seeing-significant-increase-in-rapes-reported/ (last visited Oct. 13, 2023).

*Plaintiff Beverley C. Salahuddin Thompson's Complaint for Damages and Demand for Trial by Jury*

## VII.   <u>STATEMENT OF CLAIMS</u>

### COUNT I
(*Discrimination Based on Gender Pursuant to
Title IX of the Education Amendments Act of 1972*)

76.     Ms. Thompson incorporates the allegations of paragraphs 1 through 75 above and, in addition, states that IU intentionally discriminated against her on the basis of her gender in violation of Title IX of the Education Amendments Act of 1972, as amended, 20 U.S.C. §§ 1681 through 1688.

77.     Ms. Thompson's gender is female, which is a protected class.

78.     It is clear from Ms. Thompson's physical features that she is female.

79.     IU is aware that Ms. Thompson's gender is female.

80.     IU is a Title IX funding recipient and is therefore subject to Title IX.

81.     IU treated similarly situated individuals outside of Ms. Thompson's protected class more favorably.

82.     IU, for example, sought disciplinary charges against Ms. Thompson for public intoxication when she was not willingly intoxicated and did not willingly violate any university rules or policies.

83.     Nonetheless, IU sought disciplinary charges against Ms. Thompson, rather than waiving them, as was IU's practice, and even required her to attend a disciplinary hearing, during which she was forced to unnecessarily discuss and re-live her assault.

84.     On knowledge and belief, no other males were similarly charged with public intoxication for a non-consensual ingestion of drugs and/or alcohol or were required to attend an alcohol treatment program after being unknowingly drugged.

*Plaintiff Beverley C. Salahuddin Thompson's Complaint for Damages and Demand for Trial by Jury*

85.     IU even violated its own policies and/or practices by refusing to waive disciplinary charges against Ms. Thompson, a victim of sexual assault.

86.     IU's breaches of its own policies and/or practices further demonstrate IU's discriminatory treatment of Ms. Thompson.

87.     IU's Police Department, a subdivision of IU, also has refused to investigate the sexual assault of Ms. Thompson or provide the sexual assault kit to the Indiana State Police.

88.     The resulting hostile environment created by IU's pursuing Ms. Thompson for false disciplinary charges despite knowing she was sexually assaulted, forcing her to discuss and re-live the night of the sexual assault, violating its own policies and/or practices by refusing to waive disciplinary charges against Ms. Thompson, refusing to investigate the sexual assault of Ms. Thompson, and interfering with the criminal investigation of the sexual assault of Ms. Thompson was severe and pervasive and denied Ms. Thompson equal access to educational opportunities.

89.     Ms. Thompson experienced significant emotional harm and was even forced to delay starting graduate school as a result of the sexual assault and later disciplinary charges against Ms. Thompson.

90.     IU violated Title IX of the Education Amendments Act of 1972, as amended, 20 U.S.C. §§ 1681 through 1688, by discriminating against Ms. Thompson on the basis of her gender, female.

*Plaintiff Beverley C. Salahuddin Thompson's Complaint for Damages and Demand for Trial by Jury*

## COUNT II
### (Title VI of the Civil Rights Act of 1964)

91.     Ms. Thompson incorporates the allegations in paragraphs 1 through 90 above, and, in addition, alleges that IU intentionally discriminated against Ms. Thompson based on her African American race in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d through 2000d-7.

92.     Ms. Thompson's race is African American, which is a protected class.

93.     It is clear from Ms. Thompson's physical features that she is African American.

94.     IU is a recipient of federal funding and thus subject to Title VI.

95.     IU treated similarly situated individuals outside of Ms. Thompson's protected class more favorably.

96.     IU, for example, sought disciplinary charges against Ms. Thompson for public intoxication when she was not willingly intoxicated and did not willingly violate any university rules or policies.

97.     Nonetheless, IU sought disciplinary charges against Ms. Thompson, rather than waiving them, as was IU's practice, and even required her to attend a disciplinary hearing, during which she was forced to unnecessarily discuss and relive her assault.

98.     On knowledge and belief, no other Caucasians were similarly charged with public intoxication for a non-consensual ingestion of drugs and/or alcohol or were required to attend an alcohol treatment program after being unknowingly drugged.

99.     IU even violated its own policies and/or practices by refusing to waive disciplinary charges against Ms. Thompson, a victim of sexual assault.

*Plaintiff Beverley C. Salahuddin Thompson's Complaint for Damages and Demand for Trial by Jury*

100.    IU's breaches of its own policies and/or practices further demonstrate IU's discriminatory treatment of Ms. Thompson.

101.    IU's Police Department, a subdivision of IU, also has refused to investigate the sexual assault of Ms. Thompson or provide the sexual assault kit to the Indiana State Police.

102.    By pursuing Ms. Thompson for false disciplinary charges despite knowing she was sexually assaulted, forcing her to discuss and re-live the night of the sexual assault, violating its own policies and/or practices by refusing to waive disciplinary charges against Ms. Thompson, refusing to investigate the sexual assault of Ms. Thompson, and interfering with the criminal investigation of the sexual assault of Ms. Thompson, IU denied Ms. Thompson access to the same services and/or benefits as other Caucasian students at IU.

103.    Ms. Thompson faced significant emotional harm because of IU's discriminatory actions and was even forced to delay starting graduate school as a result of the sexual assault and the later disciplinary charges against Ms. Thompson.

104.    IU violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.* by discriminating against Ms. Thompson on the basis of her race, African American.

### COUNT III
*(Intentional Deprivation of Rights Secured to Plaintiff*
*by Section 1981 of the Civil Rights Act of 1871)*

105.    Ms. Thompson incorporates the allegations in paragraphs 1 through 104 above, and, in addition, alleges Defendant discriminated against Ms. Thompson in violation of Section 1 of the 1866 Civil Rights Act, 42 U.S.C. § 1981, by discriminating against her on the basis of her race, African American.

*Plaintiff Beverley C. Salahuddin Thompson's Complaint for Damages and Demand for Trial by Jury*

106.    Ms. Thompson is African American and had a contractual relationship with IU based on her enrollment as a student with IU.

107.    IU is furthermore a governmental entity.

108.    IU treated Ms. Thompson, an African American, differently than other students facing disciplinary issues and victims of crimes who were not African American.

109.    IU has failed to investigate the sexual assault of Ms. Thompson.

110.    IU has furthermore withheld evidence of Ms. Thompson's sexual assault from the Indiana State Police in violation of Indiana law, which was a racially motivated abuse of governmental power.

111.    IU failed to provide Ms. Thompson with "full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens" or "subject" Ms. Thompson "to like punishment, pains, penalties, taxes, licenses, and exactions of every kind . . . ."

112.    IU's conduct in this matter constitutes racially motivated misuse and/or abuse of its governmental power.

113.    Ms. Thompson seeks relief for this Section 1981 violation under 42 U.S.C. § 1983.

## COUNT IV
*(Infringement of Ms. Thompson's Constitutional Rights, Powers, Privileges, and Immunities in Violation of 42 U.S.C. § 1983)*

114.    Ms. Thompson incorporates the allegations in paragraphs 1 through 113 above, and, in addition, alleges Ms. Thompson suffered the deprivation of her rights, liberties and

*Plaintiff Beverley C. Salahuddin Thompson's Complaint for Damages and Demand for Trial by Jury*

immunities as secured and guaranteed under the Constitution and Laws of the United States of America in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

115.    Specifically, Defendants Gunnar Ortlieb, Brad Seifers, W. Quinn Buckner, Cindy Lucchese, Michael J. Mirro, Jeremy A. Morris, J. Timothy Morris, Kyle S. Seibert, Donna B. Spears, Vivian Winston, Kwan J. Wallace, and Joshua A. Eal violated Ms. Thompson's rights and guarantees as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Right to Due Course of Law under Article I, Section 12 of the Indiana Constitution.

116.    During Ms. Thompson's disciplinary process, Defendants Kwan J. Wallace and Joshua A. Eal treated Ms. Thompson, an African American, differently than other Caucasian students facing disciplinary issues without a compelling, reasonable, or rational basis.

117.    Defendant Gunnar Ortlieb also treated Ms. Thompson differently than victims of crimes who were not African American by failing to investigate the sexual assault of Ms. Thompson and withholding evidence from Ms. Thompson and the Indiana State Police without a compelling, reasonable, or rational basis.

118.    During Ms. Thompson's disciplinary process, Defendants Kwan J. Wallace and Joshua A. Eal also treated Ms. Thompson, a female, differently than male students facing disciplinary issues.

119.    Defendant Gunnar Ortlieb also treated Ms. Thompson differently than victims of crimes who were not male without a reasonable or rational basis.

120.    At minimum, Defendants Kwan J. Wallace, Joshua A. Eal, and Gunnar Ortlieb intentionally treated Ms. Thompson differently than others similarly situated without a rational

basis for the disparate treatment, and Mr. Wallace, Mr. Eal, and Mr. Ortlieb targeted Ms. Thompson because of an animus against her.

121.    Mr. Wallace and Mr. Eal took these actions with the knowledge of Defendants W. Quinn Buckner, Cindy Lucchese, Michael J. Mirro, Jeremy A. Morris, J. Timothy Morris, Kyle S. Seibert, Donna B. Spears, and Vivian Winston, and Defendants W. Quinn Buckner, Cindy Lucchese, Michael J. Mirro, Jeremy A. Morris, J. Timothy Morris, Kyle S. Seibert, Donna B. Spears, and Vivian Winston, who facilitated, approved, condoned, or turned a blind eye to it.

122.    Mr. Ortlieb took these actions against Ms. Thompson with his supervisor Defendant Brad Seifers's knowledge or at Mr. Seifers's direction. Thus, Mr. Seifers knew of Mr. Ortleib's misconduct and facilitated, approved, condoned, or turned a blind eye to it.

123.    In addition, as Indiana University's Trustees "direct the conduct of the appointed police officers" at IUPD under Ind. Code § 21-39-4-2, Defendants W. Quinn Buckner, Cindy Lucchese, Michael J. Mirro, Jeremy A. Morris, J. Timothy Morris, Kyle S. Seibert, Donna B. Spears, and Vivian Winston knew or were deemed to know of Mr. Ortlieb's misconduct and facilitated, approved, condoned, or turned a blind eye to it.

124.    Defendants W. Quinn Buckner, Cindy Lucchese, Michael J. Mirro, Jeremy A. Morris, J. Timothy Morris, Kyle S. Seibert, Donna B. Spears, and Vivian Winston, also had actual knowledge of Mr. Ortlieb's and/or IUPD's misconduct and facilitated, approved, condoned, or turned a blind eye to it.

125.    At all times relevant herein, Defendants Gunnar Ortlieb, Brad Seifers, W. Quinn Buckner, Cindy Lucchese, Michael J. Mirro, Jeremy A. Morris, J. Timothy Morris,

*Plaintiff Beverley C. Salahuddin Thompson's Complaint for Damages and Demand for Trial by Jury*

Kyle S. Seibert, Donna B. Spears, Vivian Winston, Kwan J. Wallace, Joshua A. Eal were acting under the color of state law.

## COUNT IV
*(Intentional Infliction of Emotional Distress)*

126.    Ms. Thompson incorporates the allegations of paragraphs 1 through 125 above, and, in addition, states that Defendants' conduct in this matter constitutes intentional infliction of emotional distress.

127.    Ms. Thompson exhausted her administrative remedies by filing a tort claim notice.

128.    IU's actions in this matter constitute extreme and outrageous conduct.

129.    IU's intentional and/or reckless conduct caused severe emotional distress to Ms. Thompson.

130.    IU is subject to liability for Ms. Thompson's emotional distress.

## VIII.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Beverley C. Salahuddin Thompson prays for judgment in her favor and against Defendants and that the following be awarded:

a.    Order Defendants to institute and carry out policies, practices, and programs which provide equal protection for individuals of diverse race backgrounds, and which eradicate the effects of its past and present unlawful practices.

b.    Order Defendants to make whole Ms. Thompson by providing appropriate back pay and front pay for actual damages with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to

*Plaintiff Beverley C. Salahuddin Thompson's Complaint for Damages and Demand for Trial by Jury*

eradicate the effects of their unlawful practices, including but not limited to, pecuniary losses of Ms. Thompson.

c.  Order Defendants to make whole Ms. Thompson by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

d.  Order Defendants to pay Ms. Thompson emotional distress for the malicious and reckless conduct described above, in amounts to be determined at trial.

e.  Order Defendants to pay Ms. Thompson damages for any and all injuries to her career.

f.  Order Defendant IU to provide the Indiana State Police or another appropriate law enforcement entity with the evidence it collected regarding the sexual assault and rape of Ms. Thompson.

g.  Award Ms. Thompson the cost of this action including reasonable attorney fees and any such other relief as the Court may deem just, proper and equitable.

## IX.    RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Plaintiff Beverley C. Salahuddin Thompson reserves the right to assert additional violations of federal and state law.

## X.    JURY TRIAL

Plaintiff Beverley C. Salahuddin Thompson demands trial by jury on all issues so triable.

*Plaintiff Beverley C. Salahuddin Thompson's Complaint for Damages and Demand for Trial by Jury*

Respectfully submitted,

*s/ Courtney E. Endwright*
Sandra L. Blevins, Atty. No. 19646-49
Jamie A. Maddox, Atty. No. 26522-49
Courtney E. Endwright, Atty. No. 30557-49

*Attorneys for Plaintiff Beverley C. Salahuddin Thompson*

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
Phone: (317) 687-2222
Fax: (317) 687-2221
E-mail:    sblevins@betzadvocates.com
           jmaddox@betzadvocates.com
           cendwright@betzadvocates.com
           litigation@betzadvocates.com