UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BEVERLEY C. SALAHUDDIN THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-cv-02094-TWP-MKK |
| | ) |
| THE TRUSTEES OF INDIANA UNIVERSITY, | ) |
| GUNNAR ORTLIEB In his official capacity, | ) |
| BRAD SEIFERS In his official capacity, | ) |
| W. QUINN BUCKNER In his official capacity, | ) |
| CINDY LUCCHESE In her official capacity, | ) |
| CATHY LANGHAM In her official capacity, | ) |
| MICHAEL J. MIRRO In his official capacity, | ) |
| JEREMY A. MORRIS In his official capacity, | ) |
| J. TIMOTHY MORRIS In his official capacity, | ) |
| KYLE S. SEIBERT In his official capacity, | ) |
| DONNA B. SPEARS In her official capacity, | ) |
| VIVIAN WINSTON In her official capacity, | ) |
| KWAN J. WALLACE In his official capacity, | ) |
| JOSHUA A. EAL In his official capacity, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendants' Motion to Dismiss (Filing No. 32) and Plaintiff Beverley C. Salahuddin Thompson's ("Thompson") Motion for Leave to File Surreply in Opposition to Defendants' Motion to Dismiss (Filing No. 46). Thompson brings this action against Defendants The Trustees of Indiana University ("Indiana University"), Gunnar Ortlieb ("Ortlieb"), in his official capacity, Brad Seifers, in his official capacity, W. Quinn Buckner, in his official capacity, Cindy Lucchese, in her official capacity, Cathy Langham, in her official capacity, Michael J. Mirro, in his official capacity, Jeremy A. Morris, in his official capacity, J. Timothy Morris, in his official capacity, Kyle S. Seibert, in his official capacity, Donna B. Spears, in her official capacity, Vivian Winston, in her official capacity, Kwan J. Wallace ("Wallace"), in his official

capacity, and Joshua A. Eal ("Eal") in his official capacity (collectively "Individual Defendants") (collectively with Indiana University, "Defendants").

For the following reasons, Defendants' Motion to Dismiss (Filing No. 32) is **granted**, and Thompson's Motion for Leave to File Surreply (Filing No. 46) is **denied without prejudice**.

### I.     BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Thompson as the non-moving party for each respective motion. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.     Factual Background**

Thompson is an African American female. In October 2021, she was a twenty-one year old student at Indiana University with a 3.778 GPA planning to graduate a semester early and attend law school (*see* Filing No. 29 ¶ 39). All students enrolled at Indiana University are subject to the Code of Student Rights, Responsibilities, and Conduct (the "Code of Conduct"). *Id.* at ¶ 40. The Code of Conduct prohibits, amongst other things, lewd, indecent, or obscene conduct; personal misconduct that endangers self, others in the University community or academic process; and unauthorized possession and use of alcoholic beverages. *Id.*

On October 13, 2021, the Indiana University Police Department ("IUPD") was contacted regarding a partially nude woman on campus (the "Incident") (Filing No. 29 ¶ 34). Ortlieb, who was an officer with IUPD, conducted a welfare check and found Thompson wearing only a jacket, disoriented, unaware of where she was, and unable to remember the previous evening. *Id.* ¶ 36. Ortlieb contacted emergency medical services ("EMS") and Thompson was transported to IU Health Bloomington Hospital ("IU Health"). *Id.* ¶ 37. Both EMS and the staff at IU Health

believed Thompson had been given a "date rape drug" without her consent and then was sexually assaulted. *Id.* ¶ 38.

Indiana University charged Thompson with three violations of the Code of Conduct (Filing No. 29 ¶ 40). Indiana University alleged that Thompson's conduct on the night of the Incident violated the following Code of Conduct policies: (1) conduct that is lewd, indecent, or obscene or is in violation of the Sexual Misconduct Policy; (2) actions that endanger self, others in the university community, or the academic process; and (3) unauthorized possession and use of alcoholic beverages. *Id.* Indiana University notified Thompson of these violations via an October 21, 2021, letter. *Id.* At this point, Thompson was still recovering both physically and mentally from the trauma of the horrific assault that left her semi-conscious on Indiana University's campus. *Id.* ¶ 41. Learning that Indiana University was charging her—the victim of the crime—with violations of the Code of Conduct significantly increased Thompson's trauma and stress. *Id.* ¶ 42.

Thompson's counsel contacted Indiana University's then-General Counsel and Vice President, Jacqueline Simmons ("Simmons"), and Indiana University's Vice Provost for Student Affairs and Dean of Students, Dave O'Guinn ("O'Guinn"), and informed them that Thompson was a victim of sexual assault. *Id.* ¶ 43. She explained that having to participate in a Judicial Conference would be traumatizing for her as a recent crime victim. *Id.* ¶ 44. Thompson's counsel asked to delay the Judicial Conference to provide verification from IU Health that Thompson had been given a drug without her consent and sexually assaulted. *Id.* ¶ 46. Simmons and O'Guinn had the authority to take corrective measures but chose not to respond. *Id.* ¶ 47.

Despite Thompson's communication with Simmons and O'Guinn, Defendants Wallace, Assistant Director of the Office of Student Conduct, and Eal, Sexual Misconduct Investigator at Indiana University, informed Thompson that a Judicial Conference would take place regarding the

potential Code of Conduct violations and insisted that Thompson participate. *Id.* ¶ 48. Wallace and Eal denied Thompson and her counsel access to any of the relevant documents mentioned in their October 21, 2021, letter ahead of the Judicial Conference. *Id.* ¶ 50. When they finally were provided access, Indiana University prevented Thompson and her counsel from making copies or taking photographs of such documents under threat of being criminally charged by IUPD if any photographs or copies were made. *Id.*

During the Judicial Conference, Wallace and Eal forced Thompson to disclose what had occurred when she was sexually assaulted. *Id.* ¶ 51. She also disclosed during the Judicial Conference that a medical-forensic examination had been conducted to collect evidence of a sexual assault. *Id.* Thompson then requested that the disciplinary charges against her be dismissed as she had not violated the Code of Conduct. *Id.* ¶ 52. Specifically, Thompson had no control over where her body was placed after she was drugged and sexually assaulted, nor could she control what she was wearing after being attacked. *Id.* ¶ 53.

Wallace and Eal refused, and instead offered a pardon to Thompson through Indiana University's amnesty process. *Id.* ¶ 52. Wallace and Eal claimed Thompson had not been given a "date rape drug" because her "drug test was negative" but no date rape drug test had been administered. *Id.* ¶ 54. IU Health told Thompson that no test for any "date rape drug" had been conducted as a matter of hospital policy based on the short half-life of such date rape drugs. *Id.* ¶ 55. Wallace and Eal continued to try to discredit, disregard, berate, humiliate, harass, and/or otherwise discriminate against Thompson while maintaining Indiana University's position that she was not drugged. *Id.* ¶ 56, 57.

Wallace and Eal conditioned the amnesty offer on Thompson's participation in an alcohol treatment program based on her blood alcohol content that IUPD had obtained by coercing IU

Health to violate the Health Insurance Portability and Accountability Act ("HIPAA"). *Id.* ¶ 59. Indiana University should not have had access to Thompson's protected health information, and IU Health agreed that it violated Thompson's HIPPA rights by disclosing her protected health information to IU. *Id.* ¶ 60. Wallace and Eal also refused to dismiss the charges against Thompson unless she allowed IUPD, rather than outside police, to investigate her sexual assault. *Id.* ¶ 58. Thompson confirmed in writing that she did not consent to Indiana University's handling of her sexual assault claim. *Id.* ¶ 62. Thompson alleges that Indiana University's treatment "reflected its discriminatory beliefs that because of her color, race, and/or gender, she must be a criminal, the wrongdoer, or at least partially responsible for what happened to her." *Id.* at ¶ 68. Wallace and Eal were appointed decision makers during the Judicial Conference, and both had the authority from Indiana University to take any necessary corrective measures but opted not to. *Id.* ¶ 49.

Eventually, Indiana University dismissed the charges against Thompson, but only after causing her significant harm. *Id.* ¶ 70. There were several actions Indiana University took that harmed Thompson, including failure to provide her with the bodycam footage from the initial welfare check and trip to the hospital as well as refusing to turn over the sexual assault kit to the Indiana State Police. *See id.* ¶¶ 71-79. At all times, beginning in October 2021 through present, Thompson or her counsel fully apprised Indiana University directly of this treatment of Thompson, but Indiana University failed to correct this treatment. *Id.* ¶ 80.

B. **Procedural Background**

On October 13, 2023, Thompson filed a Complaint in state court (Filing No. 1-2). The original Complaint alleged several claims against Defendants: (1) violation of Title IX; (2) violation of Title VI; (3) violation of Section 1981; (4) violation of Section 1983; and (5) intentional infliction of emotional distress. *Id.* at 4-24. Defendants removed the case to federal court on November 20, 2023 (Filing No. 1).

On January 2, 2024, Defendants filed a Motion to Dismiss for Failure to State a Claim (Filing No. 19).  On January 23, 2024, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Thompson filed the operative Amended Complaint (Filing No. 29).  Defendants then filed the instant Motion to Dismiss (Filing No. 32).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff.  *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level."  550 U.S. 544, 555 (2007).  Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient.  *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009).  The allegations must "give the defendant fair notice of what the… claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.  Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted).  To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.    DISCUSSION

The Amended Complaint alleges four claims, Count I: Discrimination Based on Gender Pursuant to Title IX; Count II: Title VI of the Civil Rights Act of 1964; Count III: Intentional Deprivation of Rights Secured to Plaintiff by Section 1981 of the Civil Rights Act; Count IV: Infringement of Ms. Thompson's Constitutional Rights, Powers, Privileges, and Immunities in Violation of 42 U.S.C. § 1983; and Count V: Intentional Infliction of Emotional Distress. (Filing No. 29 at 12-20.) Defendants ask the Court to dismiss all counts of Thompson's Amended Complaint because she "(1) directs her claims at improper parties; (2) seeks relief that violates the Eleventh Amendment; and (3) fails to establish the *prima facie* elements of her claims." (Filing No. 33 at 1-2) (emphasis added).  Thompson moves for leave to file a surreply in opposition to Defendants' Motion to Dismiss (Filing No. 46).  The Court will first address Thompson's Motion for Leave to File Surreply and then turn to Defendants' Motion to Dismiss.

**A.    Motion for Leave to File Surreply**

On February 6, 2024, Defendants filed their Motion to Dismiss and brief in support (Filing No. 32; Filing No. 33).  On February 27, 2024, Thompson filed her response in opposition (Filing No. 34).  On March 11, 2025, Defendants filed their reply brief (Filing No. 41).  Thompson requests leave to file a surreply, arguing that Defendants advanced four new arguments in their reply brief (*see* Filing No. 46).

Local Rule 7-1 does not provide for a surreply for motions to dismiss, and surreplies are only permissible under Local Rule 56–1(d) in briefing motions for summary judgment.  S.D. Ind. L.R. 7–1, 56–1.  However, a party may seek leave from the court to file a surreply in limited circumstances.  *Heckler & Koch, Inc. v. German Sport Guns GmbH*, No. 1:11–CV–1108–SEB–TAB, 2013 WL 2406262, at *3 (S.D. Ind. May 31, 2013).

> The purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion. New arguments and evidence may not be raised for the first time in a reply brief. Reply briefs are for replying, not raising new arguments or arguments that could have been advanced in the opening brief. Courts allow a surreply brief only in limited circumstances to address new arguments or evidence raised in the reply brief or objections to the admissibility of the evidence cited in the response.

*Lawrenceburg Power, LLC v. Lawrenceburg Mun. Utils.*, 410 F. Supp. 3d 943, 949 (S.D. Ind. 2019) (internal citations and quotation marks omitted).

After review of the parties' briefing, the Court finds that the Defendants did not raise new arguments in its reply brief. Instead, the reply brief provided the Defendants' response to the arguments advanced by Thompson in her response brief. The limited circumstances for allowing a surreply—to address new arguments or evidence raised in the reply brief—are not present and as a result, Thompson's Motion for Leave to File Surreply in Opposition to Defendants' Motion to Dismiss is **denied** and the proposed surreply (Filing No. 46-1), response (Filing No. 47), and reply (Filing No. 50), are **not considered.**

**B.     Motion to Dismiss**

As an initial matter, Thompson argues that the Court should "ignore allegations added by Defendants from documents not referenced or 'central' to [her] claims in her Amended Complaint" or convert Defendants' Motion to a motion for summary judgment (Filing No. 34 at 10). Defendants' statement of facts includes multiple citations to Thompson's filed tort claim notice and the exhibits attached to it (*see generally* Filing No. 33 at 3-6; Filing No. 20-1). When deciding a motion to dismiss for failure to state a claim, a court may consider documents attached to or referenced in the pleading if they are *central* to the claim. *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012).

8

Defendants argue that "[c]ourts within this circuit regularly consider similar administrative complaints attached to a defendant's motion." (Filing No. 41 at 2.)  The cases relied on by Defendants all refer to administrative complaints for the purpose of determining whether plaintiffs failed to exhaust administrative remedies.  *See Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014); *Stafford v. Nat'l R.R. Passenger Corp.*, No. 1:11-cv-113-WTL-MJD, 2011 WL 2462245, at *3 (S.D. Ind. June 17, 2011) (rejecting defendants' argument that plaintiff's failure to specify claims in EEOC charge prohibited plaintiff from bringing forth related Title VII claims). These cases are wholly distinguishable from the instant case.

Defendants ask the Court to consider not only Thompson's Notice of Tort Claim but also consider the one hundred and six pages of exhibits attached to it (*see generally* Filing No. 33) (citing to multiple exhibits attached to the Notice of Tort Claim in its background section).  The exhibits attached to the Tort Claim raise multiple disputes regarding admissibility and would require this motion to dismiss to be converted to a motion for summary judgment.  Because Defendants maintain that "none of [their] dismissal arguments rise or fall based on the allegations in [the Notice of Tort Claim]", the Court will not consider the allegations within (*see* Filing No. 41 at 2).

1. **Count I: Title IX**

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a); *see also Gebser v. Lago Visto Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998) (explaining that Title IX is enforceable through an implied private right of action).  The Seventh Circuit has held that Title IX actions may only be brought against an educational institution, not against individuals.  *See Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1019 (7th Cir. 1997).  Understanding this

holding, Thompson has clarified in her response that she is asserting her Title IX claim "against the Trustees of Indiana University rather than the Individual Defendants." (Filing No. 34 at 16).[1] Accordingly, Thompson's Title IX claim against the Individual Defendants is **dismissed**.

As to her Title IX claim against Indiana University, Defendants assert Thompson cannot state a *prima facie* case for sex discrimination. When enacting Title IX, "Congress sought to hold educational institutions liable for their own misconduct, not for the misconduct of an employee." *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 605 (7th Cir. 2008); *see Gebser*, 524 U.S. at 289–90; *see also Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012) (noting that a university sued in a private suit under Title IX cannot be held liable on the ground of *respondeat superior* for an employee's violation of the statute). However, in rare circumstances, a university may be held liable for teacher or student conduct. *See Gebser*, 524 U.S. at 286. For a university to be held liable for the actions of their employees, their deliberate indifference must subject its students to harassment. *See Davis Next Friend LaShonda D. v. Monroe County Bd. of Ed.*, 526 U.S. 629, 644 (1999). To show deliberate indifference, a plaintiff must prove two elements to succeed:

> First, 'an official of the recipient entity with authority to take corrective action to end the discrimination' must have 'actual knowledge of discrimination in the recipient's programs.' Second, the official's 'response [to that knowledge] must amount to deliberate indifference to discrimination" reflecting "an official decision by the recipient [entity] not to remedy the violation.'

*C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 541 (7th Cir. 2022) (internal citations omitted).

Defendants and Thompson devote substantial portions of their briefs discussing the elements of deliberate indifference (*see* Filing No. 33 at 8-11; Filing No. 34 at 16-20; Filing No. 41 at 7-9). The Court need not delve into the parties' arguments related to deliberate indifference

---

[1] Similarly, Thompson asserts that her Title VI claims are also against the University rather than the Individual Defendants (Filing No. 34 at 16).

because it is clear the Amended Complaint fails to allege that Thompson was excluded from, or denied the benefits of, an educational program.

Title IX claims are premised on a person being deprived of the benefits of an educational program. The Amended Complaint fails to specify what program or benefit Thompson was deprived of by Ortlieb's failure to report the potential sexual assault, by Indiana University seeking disciplinary charges for her violation of the Code of Conduct, or by Indiana University requiring her to participate in the Judicial Conference. In *Jauquet*, the court held that plaintiff failed to allege how a school dress code, culture, and response to bullying deprived her of an educational benefit when the complaint repeatedly emphasized that the plaintiff was an honor roll student and did not suggest that her academic status changed as a result of the practices and policies alleged. *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.33d 802, 810 (7th Cir. 2021). Similarly, Thompson's Amended Complaint highlights her "stellar academic record" and her success in "matriculat[ing] to law school" but fails to plead that her academic status changed as a result of Indiana University's actions.

Thompson argues in her response that Indiana University's treatment of her "left a permanent mark on her record, which is critical considering [Thompson] has matriculated to law school and will be required to provide college records with her bar application." (Filing No. 34 at 20.) Even if true, this argument is not supported by any allegation in the Amended Complaint. The Amended Complaint does not allege that Thompson has a mark on her record and with the charges being dismissed, it is unclear to the Court what mark, if any, would be there (*see* Filing No. 29 ¶ 70). The allegations in the Amended Complaint fail to support a reasonable inference that Indiana University excluded Thompson from any educational program. For this reason alone, Thompson's Title IX claim is **dismissed**.

### 2. Count II: Title VI

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. In essence, Title VI and Title IX make the same guarantees. Because the statutes are so similar, "a decision interpreting one generally applies to the other." *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014). Therefore, consistent with the Court's Title IX analysis above, Thompson's Title VI claims against the Individual Defendants and Indiana University are **dismissed** as well.

### 3. Count III: Section 1981

Section 1981 provides that "all persons… shall have the same right in every State and Territory to make and enforce contracts… as is enjoyed by white citizens." 42 U.S.C. § 1981. The term "make and enforce contracts" encompasses "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," including educational contracts. 42 U.S.C. § 1981(b); *see Haynes v. Indiana Univ.*, 902 F.3d 724 (7th Cir. 2018). However, Section 1981 claims cannot be brought against state actors. *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989); *Barnes v. Bd. of Trustees of Univ. of Illinois*, 946 F.3d 384, 389 n. 1 (7th Cir. 2020). Section 1983 constitutes the exclusive remedy against state actors for Section 1981 violations. *Id*. Accordingly, the viability of Thompson's Section 1981 claims will be discussed with her Section 1983 claims.

### 4. Count IV: Section 1983

The Fourteenth Amendment Due Process Clause provides: "[n]o State shall...deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. Under 42 U.S.C. § 1983, an individual may bring a claim against a person acting under the color of state law for a violation of this constitutional right. *Colbert v. City of Chicago*, 851 F.3d 649,

656 (7th Cir. 2017). Defendants argue Thompson's Section 1981 and Section 1983 claims fail because they are "(1) directed at the improper parties; (2) do not set forth violations of federal law; and (3) seek relief that cannot be awarded under Section 1981 or Section 1983." (Filing No. 33 at 13.)

Both parties agree that neither Section 1981 or Section 1983 permit monetary recovery from Indiana University or the Individual Defendants in their official capacities because such relief is barred by the Eleventh Amendment. (*See* Filing No. 33 at 14; Filing No. 34 at 22-23); *see also Haynes*, 902 F.3d at 731-32 ("A plaintiff cannot bring a claim for damages against state personnel in their official capacities"). Thompson clarifies in her response that her Section 1983 claims are necessarily alleged only against the Individual Defendants in their official capacities (Filing No. 34 at 25).[2] *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (providing an exception to Eleventh Amendment immunity that allows for prospective injunctive relief claims against individual officials in their official capacities for ongoing violations).

Thompson has requested prospective injunctive relief (1) ordering "Defendants to institute and carry out policies, practices, and programs which provide equal protection for individuals of diverse race backgrounds, and which eradicate the effects of its past and present unlawful practices"; (2) ordering Indiana University "to provide the Indiana State Police or another appropriate law enforcement entity with the evidence it collected regarding the sexual assault and rape of [Thompson]"; and (3) ordering Indiana University to "expunge" certain evidence related to the Incident while also ordering Indiana University to "continue to preserve all evidence of [Thompson's] sexual assault and rape." (Filing No. 29 at 21-22.) Defendants argue that

---

[2] Defendants attempt to argue that this statement equals a waiver of all requests for injunctive relief because the relief sought in the Amended Complaint is directed at "Defendant IU" (*see* Filing No. 41 at 5). Because "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity," the Court will still assess the merits of Thompson's claims. *See Ky v. Graham*, 473 U.S. 159, 165-66 (1985).

Thompson's first request should be dismissed because she lacks standing, her second request should be dismissed because she has no constitutional right to it, and her final requests be dismissed because she has not alleged a continuing injury redressable by the relief sought (*see* Filing No. 33 at 20-22).

To have standing for prospective injunctive relief, "a plaintiff must face a real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (internal quotation marks omitted). The Amended Complaint does not allege that Thompson is a current student at Indiana University, nor does it allege that she intends to re-enroll at Indiana University. Thompson therefore lacks standing for her first request of injunctive relief because she does not face any real and immediate threat of injury should Indiana University shamefully not provide equal protection to its students because she is no longer one of its students.[3]

Thompson's remaining requests similarly fail because they are not cognizable under *Ex Parte Young*. As stated above, *Ex Parte Young* allows for prospective injunctive relief to remedy *ongoing violations* of federal law. The Amended Complaint fails to allege how Indiana University's failure to investigate her alleged sexual assault, or how their possession of her rape kit, violated federal law.[4] The Amended Complaint also fails to explain how Indiana University's continued possession of her records and rape kit relate to any ongoing violation of her federal rights, and it does not show that any of her requests for injunctive relief would remedy the

---

[3] Thompson offers no argument to support her position that she has standing to bring this request for injunctive relief (*see* Filing No. 34 at 26 ("Even if [Thompson] lacks standing for this first request for injunctive relief, the other requests are certainly pursuable by her")).

[4] Thompson explains that IUPD retained her blood alcohol content levels and other medical records as a result of Indiana University's violation of HIPAA privacy laws (Filing No. 34 at 6). This does not, however, explain how IUPD's possession of the records violates HIPAA or any other federal law. Thompson's claim, if any, should therefore be directed at IU Health who is not a party in this case.

14

unalleged ongoing violations. *See Patton v. Indiana Univ. Bd. of Trustees*, No. 1:20-cv-00699-TWP-MJD, 2022 WL 3716522, at *7 (S.D. Ind. Aug. 29, 2022) (finding that plaintiff was not entitled to expungement of records related to a bomb threat incident because his complaint did not allege that that action resulted in an ongoing violation of his federal rights). Accordingly, Thompson's Section 1981 and Section 1983 claims are **dismissed**.

### 5. Count X: Intentional Infliction of Emotional Distress ("IIED")

To establish a claim for IIED, a plaintiff must plead that a defendant: "(1) engaged in extreme and outrageous conduct; (2) which intentionally or recklessly; (3) caused; (4) severe emotional distress to another." *Rihm v. Hancock Cnty. Libr.*, 954 F. Supp. 2d 840, 858 (S.D. Ind. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6)." *Lekens v. Swifty Farms, Inc.*, No. 4:20-cv-00228-SEB-DML, 2021 WL 3401255, at *2 (S.D. Ind. Aug. 4, 2021) (citing *Iqbal*, 556 U.S. at 678). "The requirements to prove [IIED] are 'rigorous'", and liability can only be found when a defendant's conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011); *Lachenman v. Stice*, 838 N.E.2d 451, 456-57 (Ind. Ct. App. 2005).

Furthermore, as the name suggests, IIED is an *intentional* tort. "It is the *intent* to harm the plaintiff emotionally which constitutes the basis for the tort" *Id.* at 457 (emphasis added). "[C]ausing a person to have emotional distress divorced from an intention to cause emotional distress cannot be a basis for an IIED claim." *Doe v. Indiana Wesleyan Univ.*, No. 1:20-CV-00039-HAB, 2020 WL 2474483, at *10 (N.D. Ind. May 12, 2020).

15

Defendants argue the Amended Complaint fails to allege a *prima facie* case for IIED because it fails to include a single allegation that Defendants intended to cause Thompson emotional distress and the conduct at issue fails to rise to the level of extreme and outrageous conduct that goes beyond all possible bounds of decency. Thompson responds that the Amended Complaint directly alleges that Defendants' conduct was "intentional and/or reckless," (Filing No. 29 ¶ 140), and the facts alleged within directly show intentional and reckless behavior on the part of the Defendants (Filing No. 34 at 21).

The insufficient averment that "[Indiana University's] intentional and/or reckless conduct caused severe emotional distress to [Thompson]," (Filing No. 29 ¶ 140), is a threadbare recital of the elements of an IIED claim that is unsupported by other statements in the Amended Complaint. That leaves the Court to consider whether Thompson's allegation that Indiana University refused to consider Thompson a victim of sexual assault, or that Indiana University has actively prevented an investigation into her sexual assault allegation, is sufficient to establish a claim for IIED.

This Court has previously held that a university's failure to conduct a fair investigation is insufficient to rise to an IIED claim. *See Doe v. Univ. of S. Indiana*, 3:21-cv-00144-TWP-CSW, 2024 WL 1256039, at *17 (S.D. Ind. Mar. 25, 2024) (finding that defendants' intentional disregard for "policies/regulations by not disclosing relevant and exonerating information" did not "rise to the level of extreme and outrageous conduct needed to support a claim for IIED under Indiana law"); *see also Indiana Wesleyan Univ.*, 2020 WL 2474483, at *10 ("[N]umerous cases [] hold that a university's investigation, even if objectionable or unfair, does not rise to the level of extreme and outrageous conduct that goes beyond all possible bounds of decency) (collecting cases); *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) (noting there is no constitutional right that allows a plaintiff to demand police investigate their case). It may be true that Defendants failed to

16

investigate Thompson's sexual assault but as stated above, she has no right to have her case investigated in a particular manner, so Defendants' failure to do so cannot be seen as extreme or outrageous.

Moreover, while there are several allegations that discuss the impact of Defendants' actions on Thompson's emotional state (*see* Filing No. 29 ¶¶ 95, 112, 140), none discuss any intent or recklessness of the Defendants, individually or collectively, to cause emotional harm. The Amended Complaint only alleges that Defendants' conduct – charging Thompson with violations of the Code of Conduct and not investigating her sexual assault – was intentional. It is not enough to allege that Defendants' conduct was intentional or reckless; their conduct must have intentionally or recklessly *caused harm*. Because the Amended Complaint fails to state a claim for IIED, that claim is **dismissed**.

C.  **Whether to Grant Leave to Amend**

Defendants argue the Amended Complaint should be dismissed with prejudice (Filing No. 33 at 22). Thompson's response in opposition to Defendants' motion to dismiss fails to address this argument (*see* Filing No. 34). However, on the merits, the Court determines the dismissal should be without prejudice as to certain claims.

Rule 15(a)(2) advises district courts to "freely give leave [to amend the pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, when a complaint fails to state a claim for relief, the plaintiff should be given at least one opportunity to try to amend their complaint before the entire action is dismissed. *O'Boyle v. Real Time Resolutions*, 910 F.3d 338, 347 (7th Cir. 2018). The Court need not grant leave to amend if "'it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted.'" *Id.* at 347 (quoting *Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)). "An amendment is

17

futile if the amended complaint would not survive a motion for summary judgment." *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007).

First, Defendants argue that Thompson cannot amend her allegations against the Individual Defendants to support a viable claim under Title IX, Title VI, Section 1981, or Section 1983 ([Filing No. 33 at 22](#)). Indeed, an amendment of Thompson's Title IX and Title VI claims against the Individual Defendants would be futile. However, as noted in the discussion above, prospective injunctive relief claims can proceed against individual officials in their official capacities. Should Thompson modify the type of injunctive relief she seeks, or plead additional allegations, it is possible her Section 1981 and Section 1983 claims might survive. Moreover, Defendants make no argument as to why any amendment of Thompson's IIED claim against the Individual Defendants or the claims alleged against Indiana University would be futile.

Second, Defendants contend dismissal with prejudice is appropriate because Thompson already had the opportunity to cure pleading defects but failed to do so. *Id.* Once a plaintiff has had one or more opportunities to cure the defects of their complaint, the court *may* dismiss claims with prejudice. *See Spears v. SLT Lending SPV, Inc.*, No. 1:21-cv-02934-TWP-MJD, 2023 WL 2600692, at *4 (S.D. Ind. Mar. 22, 2023); *see also Norman v. N.W. Ind. CA Section 8*, 2:21-cv-158-TLS-JEM, 2021 WL 4363012 (N.D. Ind. Sept. 24, 2021) (dismissing the second amended complaint with prejudice when the plaintiff had been given opportunities to amend her complaint).

Although Thompson had the opportunity to consider the arguments Defendants made in their first motion to dismiss, she did not have the opportunity to consider additional arguments that were made in Defendants' present motion to dismiss her Amended Complaint, nor did she have the opportunity to consider the Court's ruling when amending her original Complaint. In the interest of justice, Thompson should have the opportunity to amend for a second time. Accordingly,

18

Thompson's Title IX and Title VI claims against the Individual Defendants are **dismissed with prejudice**. The remaining claims are **dismissed without prejudice**.

### IV.     CONCLUSION

For the reasons explained above, Defendants' Motion to Dismiss (Filing No. 32) is **GRANTED** and Thompson's Motion for Leave to File Surreply (Filing No. 46) is **DENIED**. Thompson's Title IX and Title VI claims against the Individual Defendants are **DISMISSED with prejudice**. All remaining claims in Thompson's Amended Complaint (Filing No. 29) are **DISMISSED without prejudice**. Thompson has fourteen (14) days from the date of this Order to file a second amended complaint if such a filing would not be futile. If nothing is filed, the dismissal will be converted to one with prejudice and final judgment will issue.

**SO ORDERED.**

Date: 9/24/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Courtney E. Endwright
BETZ & BLEVINS
cendwright@betzadvocates.com

Jamie A. Maddox
BETZ & ASSOCIATES
jmaddox@betzadvocates.com

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Amanda Jane Gallagher
BARNES & THORNBURG LLP
amanda.gallagher@btlaw.com

Charity Seaborn
BARNES & THORNBURG LLP
Charity.Seaborn@btlaw.com

John R. Maley
BARNES & THORNBURG, LLP (Indianapolis)
jmaley@btlaw.com