UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BEVERLEY C. SALAHUDDIN THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-02094-TWP-MKK |
| ) | |
| THE TRUSTEES OF INDIANA UNIVERSITY, ) | |
| GUNNAR ORTLIEB In his official capacity, ) | |
| BRAD SEIFERS In his official capacity, ) | |
| W. QUINN BUCKNER In his official capacity, ) | |
| CINDY LUCCHESE In her official capacity, ) | |
| CATHY LANGHAM In her official capacity, ) | |
| MICHAEL J. MIRRO In his official capacity, ) | |
| JEREMY A. MORRIS In his official capacity, ) | |
| J. TIMOTHY MORRIS In his official capacity, ) | |
| KYLE S. SEIBERT In his official capacity, ) | |
| DONNA B. SPEARS In her official capacity, ) | |
| VIVIAN WINSTON In her official capacity, ) | |
| KWAN J. WALLACE In his official capacity, ) | |
| JOSHUA A. EAL In his official capacity, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON DEFENDANTS' MOTION TO DISMISS
AND PLAINTIFF'S MOTION TO CONVERT**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ([Filing No. 101](#)) and Plaintiff Beverley C. Salahuddin Thompson's ("Thompson") Motion to Convert Defendants' Motion to Dismiss into a Motion for Summary Judgment ([Filing No. 139](#)). Thompson brings this action against Defendants The Trustees of Indiana University ("IU"), Gunnar Ortlieb ("Ortlieb"), Brad Seifers, W. Quinn Buckner, Cindy Lucchese, Cathy Langham, Michael J. Mirro, Jeremy A. Morris, J. Timothy Morris, Kyle S. Seibert, Donna B. Spears, Vivian Winston, Kwan J. Wallace ("Wallace"), and Joshua A. Eal ("Eal"), all in their official capacities (collectively "Individual Defendants") (collectively with IU, "Defendants").

For the following reasons, Defendants' Motion to Dismiss (Filing No. 101) is **granted in part and denied in part**, and Thompson's Motion to Convert (Filing No.139) is **denied**.

## I. BACKGROUND

The following facts, taken from Thompson's Second Amended Complaint (Filing No. 80), must be accepted as true solely for purposes of the motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

### A.   Factual Background

Thompson is an African American female who attended IU in October 2021. As a student at IU, Thompson was subject to the Code of Student Rights, Responsibilities, and Conduct (the "Code of Conduct") (*see* Filing No. 80 ¶ 47). The Code of Conduct prohibits, amongst other things, lewd, indecent, or obscene conduct; personal misconduct that endangers self, others in the University community or academic process; and unauthorized possession and use of alcoholic beverages. *See id.*

Around 5:30 a.m. on October 13, 2021, Ortlieb, an officer with the IU Police Department ("IUPD"), conducted a welfare check on Thompson in response to a report of a partially nude woman on campus ("the Incident") (Filing No. 80 ¶¶ 36, 37). When Thompson was located, she was disoriented, unaware of where she was, unable to remember anything from the previous evening, and wearing only a jacket. *Id.* ¶ 38. Ortlieb contacted emergency medical services ("EMS") and Thompson was transferred to IU Health Bloomington Hospital ("IU Health"). *Id.* ¶ 39. Both EMS and the staff at IU Health believed Thompson had been given a "date rape drug" without her consent and then was sexually assaulted. *Id.* ¶ 40. Ortlieb also acknowledged that date rape drugs had potentially been used on Thompson. *Id.* ¶ 41. Numerous individuals at IU received a detailed report from IUPD about the discovery of Thompson, her condition, and her

treatment at IU Health as well as the collection of her sexual assault kit. *Id.* ¶ 44. The IUPD incident report detailing their discovery of Thompson, her condition, and her treatment at IU Health was also sent to Libby Spotts ("Spotts"), Wallace, and Eal[1]. *Id.* ¶ 45.

Believing that Thompson's conduct on the night of the Incident violated the Code of Conduct, IU charged Thompson with three violations of the Code of Conduct and set a Judicial Conference for October 27, 2021. *See id.* ¶¶ 47, 50. IU alleged that Thompson violated the following Code of Conduct policies: (1) conduct that is lewd, indecent, or obscene or is in violation of the Sexual Misconduct Policy; (2) actions that endanger self, others in the university community, or the academic process; and (3) unauthorized possession and use of alcoholic beverages. *Id.* IU notified Thompson of these violations via letter on October 21, 2021. *Id.* At that time, Thompson was still recovering both physically and mentally from the trauma of the assault that left her semi-conscious on IU's campus. *Id.* ¶ 48. Learning that IU was charging her—the victim of a crime—with violations of the Code of Conduct significantly increased Thompson's trauma and stress. *Id.* ¶ 49.

After receiving the student misconduct charges but before the October 27, 2021 Judicial Conference, Thompson informed Professor McCrory about the sexual assault and involuntary drugging she experienced. *Id.* ¶ 52. Professor McCrory called on the then-Dean of Students, Dave O'Guinn ("O'Guinn"), to advise O'Guinn of the sexual assault before Thompson's Judicial Conference. *Id.* ¶ 53. Similarly, on or around October 25, 2021, Thompson's counsel, Meggan Ehret ("Ehret"), contacted then-General Counsel and Vice President, Jacqueline Simmons ("Simmons") and O'Guinn to inform them that Thompson was a victim of sexual assault. *Id.* ¶ 55.

---

[1] Spotts was the Senior Associate Dean of Students; Wallace, the Assistant Director for Academic Misconduct for Office of Student Conduct; and Eal was the Sexual Misconduct Investigator assigned to this Incident.

Ehret explained that having Thompson participate in a Judicial Conference would be traumatizing for her as a recent crime victim. *Id.* ¶ 56. Ehret asked to delay the Judicial Conference to allow time to provide verification from IU Health that Thompson had been given a drug without her consent and sexually assaulted. *Id.* ¶ 59. Simmons and O'Guinn had the authority to take corrective measures but chose not to respond. *Id.* ¶ 60.

IU maintains an amnesty policy that specifically provides that "students who report an incident pursuant to [IU's Discrimination, Harassment, and Sexual Misconduct Policy] will not be disciplined by the university for violations of the [Code of Conduct] related to their drug and/or alcohol consumption in connection with the reported incident." *Id.* ¶ 67. IU's procedure for victims of sexual assault and/or involuntary drugging was to drop all student disciplinary charges when an allegation of sexual assault was received by IU rather than require a Judicial Conference. *Id.* ¶ 68. A firsthand report by the victim was not required by IU's policies. *Id.*

Before October 27, 2021, Wallace and Eal were aware of Thompson's sexual assault and involuntary drugging. *Id.* ¶ 72. Yet, despite Thompson's communication with Simmons and O'Guinn, and the Amnesty Policy, Wallace and Eal insisted that Thompson attend the Judicial Conference. *Id.* ¶ 73. Wallace and Eal denied Thompson and Ehret access to any of the relevant documents mentioned in their October 21, 2021 letter ahead of the Judicial Conference. *Id.* ¶ 75. When they finally were provided access, IU prevented Thompson and Ehret from making copies or taking photographs of such documents under threat of being criminally charged by IUPD if any photographs or copies were made. *Id.*

During the Judicial Conference, Wallace and Eal forced Thompson to disclose what had occurred when she was sexually assaulted. *Id.* ¶ 76. Wallace and Eal asked Thompson for specific details on what occurred throughout the night and morning of her sexual assault and/or involuntary

4

drugging, including for example, asking what her body "felt like." *Id.* Wallace and Eal also falsely claimed Thompson had not been given a "date rape drug" because her "drug test was negative" when, in fact, IU Health had not administered a date rape drug test. *Id.* ¶ 79. IU Health told Thompson that no test for any "date rape drugs" had been administered as a matter of hospital policy based of the "short half-life of such date rape drugs." *Id.* ¶ 80. Nonetheless, Wallace and Eal maintained IU's position that Thompson was not drugged. *Id.* ¶ 81. Wallace and Eal continued to try to discredit, disregard, berate, humiliate, harass, and/or otherwise discriminate against Thompson. *Id.* ¶ 82.

Due to IU's biased handling of her disciplinary matter, Thompson specifically informed Wallace and Eal during the Judicial Conference that she did not consent to IU investigating her sexual assault and/or involuntary drugging. *Id.* ¶ 86. Thompson also confirmed in writing that she did not consent to IU handling her sexual assault and/or involuntary drugging. *Id.* ¶ 87. Thompson did not trust IU or IUPD and repeatedly told them that she wanted the Indiana State Police to investigate her alleged sexual assault. *Id.* ¶ 116. In compliance with Thompson's requests, IU did not investigate her sexual assault. *Id.* ¶ 117. IU did not provide Thompson's sexual assault kit to Indiana State Police for processing pursuant to its usual policies and procedures. *Id.* On or around April 4, 2024, IU destroyed Thompson's sexual assault kit. *Id.* ¶ 119.

**B.**    **Procedural Background**

On October 13, 2023, Thompson filed a Complaint in state court (Filing No. 1-2). The original Complaint alleged several claims against Defendants: (1) violation of Title IX; (2) violation of Title VI; (3) violation of Section 1981; (4) violation of Section 1983; and (5) intentional infliction of emotional distress. *Id.* at 4-24. Defendants removed the case to federal court on November 20, 2023, (Filing No. 1).

On January 23, 2024, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Thompson filed an Amended Complaint, (Filing No. 29). Defendants filed a Motion to Dismiss, (Filing No. 32), which was granted September 24, 2024, (Filing No. 78). This Court dismissed Thompson's Title IX and Title VI claims against the Individual Defendants with prejudice and dismissed all remaining claims without prejudice (*see* Filing No. 78 at 19). Thompson was given fourteen days from September 24, 2024, to file a second amended complaint if such a filing would not be futile. *Id.*

On October 8, 2024, Thompson filed the operative Second Amended Complaint (Filing No. 80). The Second Amended Complaint alleges seven claims against Defendants: (1) discrimination under Title IX; (2) discrimination under Title VI; (3) violation of Section 1981; (4) violation of Section 1983; (5) intentional infliction of emotional distress; (6) retaliation under Title IX; and (7) breach of contract. *See id.*

On October 29, 2024, Defendants filed the instant Motion to Dismiss, (Filing No. 101). On December 10, 2024, Thompson filed her response and contemporaneously filed a Motion to Convert Defendants' motion to dismiss into a motion for summary judgment (*see* Filing No. 139). Defendants replied to the motion to dismiss and the motion to convert on December 20, 2024 and December 22, 2024 (Filing No. 152; Filing No. 158), respectively. Both motions are now ripe for ruling.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not the merits of the suit. *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). Rule 12(b)(6) allows a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P.

6

12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009). The allegations must "give the defendant fair notice of what the… claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted).

To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plaintiff "receives the benefit of imagination" at this stage "[as] long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Thus, a complaint should only be dismissed pursuant to Rule 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

B.  **Motion to Convert**

Under Federal Rule of Civil Procedure 12(d), the court must convert a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment under Rule 56 if "matters outside the

pleadings are presented to and not excluded by the Court." Fed. R. Civ. P. 12(d). If "a court chooses to consider materials outside the pleadings," then it "must treat the motion as one for summary judgment" unless the materials considered are either subject to judicial notice or essential to the plaintiff's claims. *Atlanta Gas Light Co. v. Navigators Ins. Co.*, No. 1:20-cv-02441-JPH-TAB, 2021 WL 1546060, at *2 (S.D. Ind. Apr. 19, 2021) (citing *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020)); *see Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). It is within the court's discretion to either exclude the materials and handle the case as a motion to dismiss or to consider the materials and convert to summary judgment. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). If the court elects to convert to summary judgment, all parties must have "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

### III. DISCUSSION

Defendants seek dismissal of all seven counts raised in Thompson's Second Amended Complaint. Defendants argue that "[Thompson's] third attempt to plead allegations arising out of an incident where – after voluntarily consuming excessive alcohol at 'two-dollar Tuesday' at a downtown establishment – she was found wandering the IU campus at 5:00 a.m. heavily intoxicated, only partially clothed, and without memory of most of the evening and early morning" should be dismissed in its entirety because "the Second Amended Complaint is replete with conclusory and threadbare allegations once again insufficient to state a claim" (Filing No. 102 at 9). In response, Thompson argues she has properly pleaded each claim to survive a motion to dismiss while contemporaneously asking the Court to convert Defendants' Motion to Dismiss into a motion for summary judgment. The Court will address Thompson's Motion to Convert and then address the claims set forth in her pleadings.

A.     **Motion to Convert Motion to Dismiss to a Motion for Summary Judgment**

Thompson seeks to convert the Motion to Dismiss to a motion for summary judgment on her seven claims. She argues that conversion is proper because Defendants, in their supporting brief, cite to information and documents outside of the pleadings. Thompson points out that Defendants reference her deposition testimony to present misleading assertions and present them as "facts" (Filing No. 139 ¶¶ 12, 16, 18, 20). (*See id.* ¶ 24) (Thompson taking issue with Defendants referring to "the Incident" as the welfare check conducted on her). She also contends the Defendants misstate the facts as alleged in her Second Amended Complaint. *Id.* ¶¶ 24, 25. Lastly, Thompson takes issue with Defendants referencing Indiana law relating to the handling of sexual assault kits. *Id.* ¶ 26.

The Court acknowledges Thompson's concerns with how Defendants have presented the details in the "background" section of their brief, but parties are afforded flexibility in how they present details to the court. The Court is not bound by the drafting of background sections by either party, rather the Court will independently examine the allegations in the Second Amended Complaint. Conversion to summary judgment for utilizing persuasive writing techniques is unwarranted.

Regarding Defendants' reference to Indiana Law, courts may consider statutes, ordinances, regulations, and public records when resolving a Rule 12 motion. *See Edge v. Bd. of Sch. Trustees of Salem Cmty. Sch. Corp.*, No. 4:18-CV-00167-TWP-DML, 2019 WL 2744691 (S.D. Ind. July 1, 2019) (considering an Indiana statute to determine whether plaintiff's claims should be dismissed for failing to comply with written notice requirements). Indiana's standard for handling sexual assault kits is directly related to several of Thompson's claims and may be considered accordingly. Thompson's Motion to Convert Defendants' Motion to Dismiss to a motion for summary judgment is **denied**.

B.      **Motion to Dismiss**

1.      **Count I: Discrimination in Violation of Title IX**

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To sufficiently plead Title IX sex discrimination, a plaintiff must allege: "(1) the educational institution received federal funding, (2) plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against plaintiff based on gender." *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019) (citing *Cannon v. Univ. of Chicago*, 411 U.S. 677, 689 (1979)). The Second Amended Complaint properly alleges that IU is an educational institution receiving federal funding and that Thompson has been denied the benefits of an educational program (*see* Filing No. 80 ¶¶ 165, 103-113). Thus, the only element to discuss is whether the Second Amended Complaint sufficiently alleges facts that IU discriminated against Thompson based on gender.

Although not required to specify, Thompson essentially asserts a Title IX claim under a selective enforcement theory. *See Doe*, 933 F.3d at 845-55 ("[T]ests or categories labeled 'erroneous outcome' or 'selective enforcement' or 'deliberate indifference' or 'archaic assumptions' need not be considered because at bottom they all ask the same question: whether the alleged facts, if true, raise a plausible inference that the university discriminated ... 'on the basis of sex'?"). The Second Amended Complaint alleges that IU initiated disciplinary proceedings against Thompson for public intoxication when she was not willingly intoxicated and for pursuing sexual misconduct charges against her when she was not willingly without sufficient clothing (Filing No. 80 ¶¶ 143, 144). The Second Amended Complaint also alleges that IU violated its own policies and/or

10

practices by bringing disciplinary charges against Thompson and refusing to waive them despite knowing of her sexual assault allegations. *Id.* ¶¶ 147, 148.

On its face, the Second Amended Complaint explicitly alleges that IU violated its own policies to punish Thompson, a black female, in a manner that was inconsistent with how they punished similarly-situated white males. *See id.* ¶¶ 91, 93, 97. For example, Thompson alleges "[s]pecifically, from the time it was informed of the sexual assault and/or voluntary drugging of Ms. Thompson, IU's treatment of Ms. Thompson reflected its discriminatory beliefs that because of her color, race, and/or gender, she must be a criminal, the wrongdoer, an alcoholic, academically challenged and unsuccessful, and/or at least partially responsible for what happened to her." *Id.* ¶ 99. Defendants point out that Thompson makes no effort to identify the source or specifics of those policies and argue that Thompson's race and gender discrimination claims are conclusory.

But most of Defendants' argument to dismiss is centered around the timing of when they learned of Thompson's alleged sexual assault. Defendants argue that Thompson "attempts to use inartful pleading to suggest that IUPD was aware of and reported [her] sexual assault allegation prior to [her] initial report" although IU "[was] not aware of her alleged sexual assault until *after* the disciplinary charges were filed" (Filing No. 102 at 18; Filing No. 152 at 3) (emphasis in original). Due to this fact, Defendants argue the "charging decision simply cannot be a basis for a Title IX claim." (Filing No. 102 at 18.)

At this stage, even if the alleged facts are not objectively true, the Court considers all facts in the light most favorable to Thompson. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When doing so, the Second Amended Complaint alleges that the individuals who initiated the disciplinary proceedings against her were made aware of "her condition, and her treatment at IU Health, as well as the collection

11

of her sexual assault kit" prior to charging Thompson with three violations of the Code of Conduct (Filing No. 80 ¶¶ 44, 45).  This is sufficient to infer Defendants knew that Thompson had potentially been sexually assaulted and despite this knowledge proceeded to initiate a disciplinary proceeding against her, inconsistent with how they would have treated a similarly situated white male.  *Doe v. The Trustees of the Univ. of Pa.*, 270 F. Supp. 3d 799, 824 (E.D. Pa. 2017) (noting that a plaintiff states a claim for Title IX discrimination when alleging that "the university's actions against [plaintiff] were motivated by [their] gender and that a similarly situated [person of the opposite gender] would not have been subjected to the same disciplinary proceedings."). Accordingly, Defendants' Motion to Dismiss as to Thompson's Title IX discrimination claim is **denied**.

### 2. Count II: Discrimination in Violation of Title VI

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  In essence, Title VI and Title IX make the same guarantees.  Because the statutes are so similar, "a decision interpreting one generally applies to the other." *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014).  Whether or not the allegations concerning Count II are true, or whether Thompson will succeed on her Title VI discrimination claim is not a question that this Court considers at this stage.  Therefore, consistent with the Court's Title IX analysis above, the Court concludes that the Second Amended Complaint sufficiently pleads a Title VI discrimination claim against Defendants and their Motion to Dismiss this claim is **denied**.

### 3. Count III: Section 1981

Section 1981 provides that "all persons… shall have the same right in every State and Territory to make and enforce contracts… as is enjoyed by white citizens." 42 U.S.C. § 1981.  The

12

term "make and enforce contracts" encompasses "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," including educational contracts. 42 U.S.C. § 1981(b); *see Haynes v. Indiana Univ.*, 902 F.3d 724 (7th Cir. 2018). However, Section 1981 claims cannot be brought against state actors. *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989); *Barnes v. Bd. of Trustees of Univ. of Illinois*, 946 F.3d 384, 389 n. 1 (7th Cir. 2020). Section 1983 constitutes the exclusive remedy against state actors for Section 1981 violations. *Id*. Accordingly, the viability of Thompson's Section 1981 claims will be discussed with her Section 1983 claims.

### 4. Count IV: Section 1983

Thompson alleges Defendants violated the Fourteenth Amendment when they intentionally discriminated against her because of her race. The Fourteenth Amendment Due Process Clause provides: "[n]o State shall...deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. Under 42 U.S.C. § 1983, an individual may bring a claim against a person acting under the color of state law for a violation of this constitutional right. *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017). Defendants argue that Thompson's Section 1981 and 1983 claims fail because they "(1) do not set forth violations of federal law; (2) are directed at improper parties; and (3) seek relief that cannot be awarded under Section 1981 or Section 1983." (Filing No. 102 at 25.) If the relief Thompson seeks is impermissible, her claim must be dismissed.

Thompson has requested injunctive relief (1) ordering Defendants to "expunge any evidence collected as part of the disciplinary process against [her] from [her] record at [IU]"; and (2) ordering Defendants to "expunge any reference to the disciplinary process in [her] record at [IU]." (Filing No. 80 at 44.) Defendants argue this relief is not cognizable under *Ex Parte Young* because it does not remedy an ongoing violation of federal law (Filing No. 152 at 6-8). Thompson

13

responds that this type of relief is cognizable under *Ex Parte Young* because she faces the ongoing harm of having to report the disciplinary proceeding in future state bar applications when seeking to become a licensed attorney (*see* Filing No. 142 at 30-31).

*Ex Parte Young* is applicable when the existence of certain records violates a constitutional right and has the possibility of causing ongoing harm. Thompson frames the relief she seeks as necessary to prevent the ongoing harm of having to disclose the disciplinary proceedings to state bars. However, this alleged ongoing harm is unfounded. Bar applications for the District of Columbia and California do not require applicants to disclose proceedings where no violations were found.[2] Because IU dismissed Thompson's charges, she will not be required to disclose the proceedings and no ongoing harm exists. Therefore, Thompson is not entitled to the relief she seeks. *See Patton v. Indiana Univ. Bd. of Trustees*, No. 1:20-cv-00699- TWP-MJD, 2022 WL 3716522, at *7 (S.D. Ind. Aug. 29, 2022) (finding that plaintiff was not entitled to expungement of records related to a bomb threat incident because his complaint did not allege that that action resulted in an ongoing violation of his federal rights). Accordingly, Thompson's Section 1981 and Section 1983 claims are **dismissed**.

### 5. Count V: Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must plead that a defendant: "(1) engaged in extreme and outrageous conduct; (2) which intentionally

---

[2] *See, e.g., DC Bar Admissions Browse Forms*, District of Columbia Court of Appeals (Dec. 30, 2024), https://admissions.dcappeals.gov/browseform.action?applicationId=240 (only requiring applicants to disclose if they have been "dropped, suspended, warned, placed on scholastic or disciplinary probation, expelled, requested to resign, allowed to resign in lieu of discipline, otherwise subjected to discipline, or requested to discontinue your studies by any law school"); *see also Admissions Frequently Asked Questions*, The State Bar of California (Dec. 30, 2024), https://www.calbar.ca.gov/Portals/0/documents/admissions/moralCharacter/Moral-Character-FAQ.pdf (noting that applicants only have to disclose law school discipline on the moral character application if they " have been found to have violated a college, university, or law school honor code; or have been dropped, suspended, warned, placed on disciplinary probation, expelled, or requested to resign or allowed to resign in lieu of discipline by any college, university, or law school").

or recklessly; (3) caused; (4) severe emotional distress to another." *Rihm v. Hancock Cnty. Libr.*, 954 F. Supp. 2d 840, 858 (S.D. Ind. 2013). In discussing IIED claims, Indiana courts consistently quote the Restatement (Second) of Torts with approval, which states:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Bah v. Mac's Convenience Stores, LLC*, 37 N.E.3d 539, 550 (Ind. Ct. App. 2015) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Defendants argue Thompson has failed to state a *prima facie* case for IIED because she has not alleged that IU intended to cause her emotional distress. IIED is an intentional tort and "[i]t is the *intent* to harm the plaintiff emotionally which constitutes the basis for the tort." *Lachenman v. Stice*, 838 N.E.2d 451, 457 (Ind. Ct. App. 2005) (emphasis added). "[C]ausing a person to have emotional distress divorced from an intention to cause emotional distress cannot be a basis for an IIED claim." *Doe v. Indiana Wesleyan Univ.*, No. 1:20-CV-00039- HAB, 2020 WL 2474483, at *10 (N.D. Ind. May 12, 2020). Defendants also contend that the conduct at issue in this case fails to rise to the level of extreme and outrageous conduct that goes beyond all possible bounds of decency.

Thompson responds that she alleges "more than adequate facts satisfying the intentional and/or reckless element of the IIED claim." (Filing No. 143 at 25.) Thompson contends that IU's insistence on holding the Judicial Conference despite reports of her sexual assault, IU blaming her for her sexual assault, and IU's intentional destruction of her sexual assault kit are all examples of extreme and outrageous conduct that intentionally or recklessly caused her severe emotional distress. *Id.* at 25-26.

15

The conduct Thompson alleges related to the disciplinary proceedings or IU's refusal to investigate her case does not rise to the level of extreme and outrageous conduct necessary to serve as the basis for IIED. Courts have repeatedly held that a university's failure to conduct a proper investigation does not rise to the level of extreme and outrageous conduct needed to establish an IIED claim. *See, e.g., Doe*, 270 F.Supp.3d at 827 (finding that allegations that university officials distorted the facts of an alleged sexual encounter, improperly attacked plaintiff's credibility, unjustifiably branded plaintiff a rapist, threatened plaintiff with expulsion when expulsion was not justified, and ultimately imposed an unfair sanction was not the type of "desperate and ultra extreme conduct" that would give rise to an IIED claim); *see also Doe*, 2020 WL 2474483, at *9-10; *Doe v. Univ. of S. Indiana*, No. 3:21-cv-00144-TWP-CSW, 2024 WL 1256039, at *9 (S.D. Ind. Mar. 25, 2024).

However, Thompson's allegations that IU destroyed her sexual assault kit and are actively impeding an investigation by Indiana State Police into such sexual assault are enough to establish a claim for IIED (*see* Filing No. 80 ¶¶ 117, 119, 121-122, 149, 153). *See Par. v. City of Elkhart*, 614 F.3d 677, 683 (7th Cir. 2010) (reversing the district court's dismissal of plaintiff's IIED claim when plaintiff alleged that officers "created a fake crime scene, tampered with evidence, [and] destroyed or withheld exculpatory evidence… leading to his wrongful conviction… that led to the emotional strain and mental anguish [plaintiff] faced."). Accordingly, Defendants' Motion to Dismiss as to Thompson's IIED claim is **denied**.

6. **Count VI: Retaliation under Title IX**

Thompson alleges IU retaliated against her for reporting her sexual assault by pursuing disciplinary charges against her, failing to waive disciplinary charges, and by destroying her sexual assault kit. To establish a claim for retaliation under Title IX, Thompson must allege that "(1) she engaged in a statutorily protected activity; (2) [IU] took a materially adverse action against her;

and (3) there existed a but-for causal connection between the two." *Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 851 F.3d 690, 695 (7th Cir. 2017).

Thompson's first claim of retaliation argues that IU brought disciplinary charges against her because she reported sexual assault. This claim fails because, based on the allegations in the Second Amended Complaint, there is no basis to infer a causal connection between Thompson's report of sexual assault and IU's charging decisions. A Title IX retaliation claim requires Thompson to engage in a statutorily protected activity. Thompson's own allegations state that she was charged with public intoxication and lewd conduct on October 21, 2021. Thompson personally did not report her sexual assault until after she received the student misconduct charges when she spoke to Professor McCrory (*see* [Filing No. 80](#) ¶ 52). Because Thompson did not engage in a protected activity until *after* the adverse action had taken place, the Court cannot establish a causal connection between IU's charging decisions and Thompson's report of sexual assault.

Thompson's second allegation is that IU retaliated against her when they refused to drop her disciplinary charges and made her attend the Judicial Conference to discuss her sexual assault. Thompson argues that IU deviating from its standard procedures involving victims of sexual assault, and requiring her to attend the Judicial Conference, is proof of their retaliatory intent. However, as discussed in detail below, Thompson does not identify the source of the policy requiring IU to immediately drop all student charges after an allegation of sexual assault is received. But consistent with the Amnesty Policy alleged by Thompson, IU did not discipline her for violations of the Code of Conduct. Thompson has not alleged how IU dropping all disciplinary charges related to her actions on the day of the alleged sexual assault is retaliation for her reporting said sexual assault. *See Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 960 (N.D. Ill. 2017)

17

("A Title IX claim fails if the plaintiff has not alleged some 'retaliatory motive' connecting the protected activity to the adverse action.").

Thompson's third and final allegation is that IU retaliated against her by destroying her sexual assault kit in April of 2024. The Second Amended Complaint fails to allege facts that allow the Court to establish a causal connection between Thompson reporting her sexual assault in 2021 and the Defendants' decision to destroy her sexual assault kit three years later. The only allegation in the Second Amended Complaint that attempts to establish a causal connection is the allegation that IU "took these actions to punish [Thompson] for reporting a sexual assault." (Filing No. 80 ¶ 234.) This allegation is conclusory and "not entitled to be assumed true." *Ashcroft*, 556 U.S. at 681. For the reasons stated above, Thompson's Title IX retaliation claim is **dismissed**.

7. **Count VII: Breach of Contract**

Thompson asserts a breach of contract claim against IU for its alleged failure to abide by a set of duties it owed to her (*see* Filing No. 80 ¶¶ 237-243). "Indiana courts regard the relationship between a student and an educational institution as contractual in nature, but out of deference to the subjective professional judgment of trained educators, they do not apply contract law rigidly." *Doe v. Butler Univ.*, 696 F. Supp. 3d 520, 526 (S.D. Ind. 2023) (internal quotations omitted). To establish a claim for breach of contract against IU, Thompson must (1) identify the contractual promise breached by the university; and (2) allege facts to support a conclusion that the university acted "illegally, arbitrarily, capriciously, or in bad faith." *Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992); *Amaya v. Brater*, 981 N.E.2d 1235, 1240 (Ind. Ct. App. 2013).

In order for Thompson's breach of contract claim to proceed, the Second Amended Complaint must "be specific about the source of [the] implied contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 773 (7th Cir. 2013). It is not enough for

Thompson to merely state that such an implied contract existed. *Id.*; *see also Bissessur*, 581 F.3d at 601.

The allegations in the Second Amended Complaint are insufficient to establish that IU entered into a contract with Thompson from which the university's breach can be plausibly inferred. Although the Second Amended Complaint identifies twelve contractual promises, it fails to identify *where* these contractual promises are located (*see* Filing No. 80 ¶ 241). Thompson's failure to identify the source of these promises is fatal to her claim. *See, e.g, Charleston*, 741 F.3d at 773 (affirming dismissal of complaint when plaintiff failed to identify "University Statutes" and their contents); *cf. Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 884 (7th Cir. 2022) (finding that plaintiff sufficiently identified the source of an implied contract to provide in-person instruction when the complaint pointed to university catalogs, registration portals, and different charges for online versus on-campus programs).

Because the Second Amended Complaint fails to identify the contractual promise breached by IU, there is no need to proceed to step two and discuss whether IU acted in bad faith. Thompson's breach of contract claim is **dismissed**.

## IV.     CONCLUSION

For the reasons explained above, Thompson's Motion to Convert Defendants' Motion to Dismiss into a Motion for Summary Judgment (Filing No. 139) is **DENIED**. Defendants Motion to Dismiss Thompson's Second Amended Complaint (Filing No. 101) is **GRANTED in part and DENIED in part**. Thompson's claims for Count I: Discrimination under Title IX, Count II: Discrimination under Title VI, and Count V: Intentional Infliction of Emotional Distress, have survived the initial hurdle of a motion to dismiss. Whether or not these claims can survive summary judgment is a matter for another day. The claims for Count III: Violation of Section 1981; Count

IV: Violation of Section 1983; Count VI: Retaliation under Title IX; and Count VII: Breach of Contract are **DISMISSED with prejudice**.

  **SO ORDERED.**

Date: 1/3/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Courtney E. Endwright
BETZ & BLEVINS
cendwright@betzadvocates.com

Jamie A. Maddox
BETZ & ASSOCIATES
jmaddox@betzadvocates.com

Sandra L. Blevins
BETZ & BLEVINS
sblevins@betzadvocates.com

Amanda Jane Gallagher
BARNES & THORNBURG LLP
Amanda.Gallagher@btlaw.com

Charity Seaborn
BARNES & THORNBURG LLP
Charity.Seaborn@btlaw.com

John R. Maley
BARNES & THORNBURG, LLP (Indianapolis)
jmaley@btlaw.com