**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| BEVERLEY C. SALAHUDDIN THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-02094-TWP-MKK |
| | ) | |
| THE TRUSTEES OF INDIANA UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION FOR SANCTIONS**

This matter is before the Court on Plaintiff Beverley C. Salahuddin Thompson's ("Thompson") Motion for Sanctions for Spoliation of Evidence (Filing No. 251). Thompson initiated this action against Defendant The Trustees of Indiana University ("the University") claiming the University violated Title VI of the Civil Rights Act, Title IX of the Education Amendments Act, and 42 U.S.C. §§ 1981 and 1983, as well as state law claims. Following a motion to dismiss, Thompson's claims under Title VI and Title IX as well as a state law claim of Intentional Infliction of Emotional Distress ("IIED") remain pending. Thompson alleges the University destroyed evidence relevant to her claims and seeks sanctions for the spoliation of that evidence. For the reasons discussed below, the Motion is **denied**.

## I.   BACKGROUND

### A.   Factual Background

On October 12, 2021, Thompson, a student at Indiana University Bloomington ("IU"), visited two bars with friends in Bloomington, Indiana. In the early morning hours of October 13, 2021, a student jogger observed Thompson on IU's campus partially nude and disoriented, and he called 911 (Filing No. 254-1 at 4). Video surveillance shows Thompson walking alone on IU's

campus at 4:36 a.m. wearing only socks and a jacket. *Id.* Video surveillance also shows Thompson attempting to enter buildings on IU's campus using her student identification card. Indiana University Police Department ("IUPD") Officer Gunnar Ortlieb ("Officer Ortlieb") responded to the 911 call, and when he located Thompson, he observed that she was partially nude, disoriented, and unable to remember how she arrived there. *Id.*

Thompson was transported to Indiana University Health Bloomington Hospital ("IUH") by ambulance, where her toxicology screening showed no drugs but did show a blood alcohol concentration ("BAC") of 0.298 percent (Filing No. 255-1 at 1). Thompson had no memory of the events of that night, and because she was concerned that she may have been assaulted, she consented to IUH's staff's offer for a sexual assault exam. A trained sexual assault nurse examiner ("SANE") performed the exam. Thompson chose, at that time, not to report to law enforcement any allegations of sexual assault, but she allowed IUH to collect and secure an anonymous sexual assault kit. *Id.*

Indiana Code § 16-21-8-2 provides that each county or regional sexual assault team must develop a plan that establishes the protocol for sexual assault victim response and treatment, including the collection, preservation, secured storage, and destruction of samples. Ind. Code § 16-21-8-2(a). This plan must address the method of maintaining confidentiality of the alleged sexual assault victim regarding the chain of custody and storage of sexual assault kit samples. *Id.* § (b)(1).

IUPD follows the Monroe County Sexual Assault Response Team Protocol ("SART Protocol") (Filing No. 246 at 16–17), which sets the general procedures to be followed in response to a sexual assault incident (Filing No. 257-24 at 1). *See also Sexual Assault Response Team*, Monroe County, Indiana Prosecutor: Prosecuting Attorney Erika Oliphant, https://www.monroeprosecutor.us/prevention-education/sex-crimes/sart/.

The Monroe County SART Protocol preserves the victim's choice to either report or not report a sexual assault incident (*see* Filing No. 257-24 at 1). If the victim chooses not to report, the "evidence obtained from the examination will be securely stored for the period of one year using only a confidential number." *Id.* The role of law enforcement is to conduct a criminal investigation, which is conducted according to law enforcement training and departmental policy. *Id.* at 5. The SART Protocol responsibilities of law enforcement will vary according to whether the victim chooses to report or not. *Id.* If the victim chooses not to report, the role of law enforcement is to obtain, transport, and store the evidence for one year using only a confidential number assigned by the law enforcement agency according to the SART Protocol for non-reporting adults. *Id.* Following a forensic sexual assault medical examination, the SANE nurse contacts,

> the proper law enforcement agency, based on the jurisdiction where the incident occurred, to transport the . . . sexual assault kit and/or clothing samples for storage, using only a confidential number and <u>not</u> the patient's name. The police agency will assign a Call For Service (CFS) number or Case Number that will serve as a confidential number to track the evidence obtained from the patient. The confidential number assigned to the patient by the law enforcement agency will be recorded in the patient's medical chart by the SANE nurse or health care provider.

*Id.* at 7 (emphasis in original). Then,

> [e]ach law enforcement agency will abide by their existing policy in the storage of refrigerated samples in a secure area for one year.
>
> If the victim has chosen not to report to law enforcement within one year of the date the sample is logged into their system, then each law enforcement agency will abide by their existing policy on the destruction of evidence and may dispose of the evidence collected.
>
> If and when a victim chooses to report the incident to law enforcement, *that agency will conduct the victim interview at their facility and will follow the SART Protocol for Reporting Adults.*
>
> Law enforcement will be responsible for *obtaining a signature* from the victim on a medical release form. This *will allow* law enforcement to have *access and obtain* the forensic medical examination *records from the medical care provider <u>to match the confidential number of any evidence . . . still in storage.</u>*

*Id.* (emphases added).

In the event a criminal charge is filed, the evidence is kept beyond the one-year period according to the existing departmental policy regarding the storage of evidence and the Monroe County Prosecutor's Office policy for the retention of evidence. *Id.* The Monroe County Prosecutor's Office receives reports from law enforcement agencies, assesses the legal sufficiency of the evidence, and determines if criminal charges should be filed in a particular case. *Id.* at 9. In Monroe County, the SART includes representatives from the Bloomington Police Department, the Monroe County Sheriff's Office, IUPD, and the Indiana State Police ("ISP"). *Id.* at 11.

Here, an IUPD officer picked up Thompson's anonymous sexual assault kit from IUH. Per the Monroe County SART Protocol, the kit had no identifying information regarding the identity of the victim or when or where the alleged sexual assault occurred (Filing No. 255-7 at 1).

The University received a report from IUPD noting that Thompson had been found nude on campus with a 0.298 BAC. *Id.*; (Filing No. 243-9). The IUPD report did not mention that Thompson may have been sexually assaulted. Based on the report's description, student misconduct charges were initiated against Thompson charging her with three violations of the Student Conduct Code, including: lewd, indecent, or obscene conduct; personal misconduct that endangers oneself or others; and unauthorized use of alcoholic beverages for public intoxication on university property (Filing No. 268-2).

Thompson retained attorney Meggan Ehret ("Ehret") to represent her, and in a telephone call with the University, Ehret reported that Thompson had been sexually assaulted. The previously scheduled disciplinary hearing was converted to a meeting, which was held on October 27, 2021. At the meeting, Thompson explained her belief that she had been drugged and sexually assaulted. A few hours after the meeting, the disciplinary charges were dismissed.

A few days later, Ehret contacted general counsel for the University and, without identifying the sexual assault kit number, asked the University to preserve Thompson's anonymous sexual assault kit and told the University that she was "inclined to have the kit analyzed by a different law enforcement agency (not [IUPD])." *Id.* at 2. On November 10, 2021, Ehret gave ISP Thompson's name, the sexual assault kit identification number, the site of its collection, and the site of its storage, IUPD. *Id.* However, the kit identification number was never provided to IUPD.

On November 12, 2021, IUPD Detective Joshua Sung contacted Ehret, who stated that she had a "client" who had turned in an anonymous sexual assault kit, but Ehret refused to confirm her client's name (Filing No. 254-1 at 6). Ehret notified IUPD that she did not want it to investigate the sexual assault and reiterated the fact that the sexual assault kit was anonymous. *Id.*

On August 22, 2023, Thompson's new attorneys sent a letter to the University general counsel reiterating that the University should release all evidence in its possession of the alleged sexual assault, including the sexual assault kit and security video footage, to ISP (Filing No. 257-19 at 5). This letter did not contain the anonymous sexual assault kit's identifying information.

Thompson filed this action on October 13, 2023 in state court, alleging violations of Title IX, Title VI, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and intentional inflection of emotional distress against the University and several named defendants (Filing No. 1). Defendants removed the case to federal court on November 20, 2023. *Id.* On January 17, 2024, the University's general counsel instructed IUPD to preserve evidence relevant to this litigation but did not mention preserving any evidence of the alleged sexual assault, including the sexual assault kit (Filing No. 255-12 at 3–5).

On March 7, 2024, counsel for Thompson and the University attended an initial pre-trial conference with the Magistrate Judge (Filing No. 42). At the conference, Thompson's counsel discussed her request for injunctive relief and requested that the sexual assault kit be transferred

to ISP for processing. Counsel for the University stated that they were unaware of a sexual assault kit identified as belonging to Thompson. The parties were ordered to meet and confer about the sexual assault kit. Thompson's attorney did not identify the sexual assault kit following that initial pre-trial conference (Filing No. 264 at 14; Filing No. 254-7 at 17).

On April 4, 2024, Thompson's sexual assault kit was ordered to be disposed by a criminal investigator at the Monroe County Prosecutor's Office—under the direction of the Monroe County Prosecutor's Office—along with several other sexual assault kits that had been held for over one year and one month (Filing No. 317 at 2; Filing No. 317-1 at 9:2–14).

On May 16, 2024, the University instituted a litigation hold on IU email accounts; but because Thompson and Officer Ortlieb had left IU more than 60 days prior, their accounts no longer existed pursuant to the University's retention policies and could not be preserved (Filing No. 257-31 at 3, 6–7; Filing No. 257-50 at 3).

On July 3, 2024, the University learned that Thompson's sexual assault kit had been destroyed after it received Thompson's medical records from IUH and was able to locate the identification number for the kit in those records (Filing No. 254-7 at 17; Filing No. 264 at 14). On July 31, 2024, Thompson learned the sexual assault kit had been destroyed when she received supplemental discovery responses from the University (Filing No. 254-7 at 17; Filing No. 256 at 13). IUPD never requested that any card swipes for Thompson on building access logs be preserved from the night of October 12 to 13, 2021 (Filing No. 257-42 at 2).

**B.     <u>Procedural Background</u>**

On October 8, 2024, Thompson filed the operative Second Amended Complaint against the University and individual trustees, alleging Count I: Discrimination based on Gender in violation of Title IX of the Education Amendments Act; Count II: Discrimination in violation of

Title VI of the Civil Rights Act; Count III: Intentional Deprivation of Rights in violation of Section 1981 of Civil Rights Act; Count IV: Violation of 42 U.S.C. § 1983 and Fourteenth Amendment Rights; Count V: Intentional Infliction of Emotional Distress; Count VI: Retaliation in violation of Title IX of Education Amendments Act; Count VII: Breach of Contract (Filing No. 80). Following a motion to dismiss filed by the University, the Court dismissed Counts III, IV, VI, and VII (Filing No. 163).

On December 20, 2024, Thompson filed her first motion for sanctions against the University for spoliation of evidence, requesting that the Court sanction the University for destroying her sexual assault kit (Filing No. 153). On May 5, 2025, the parties agreed that discovery may uncover new evidence relevant to the motion and jointly moved for the Court to withdraw the motion with the understanding that the University would not raise untimeliness as an issue should Thompson refile her motion after the close of discovery (Filing No. 233). On May 6, 2025, the Court granted the joint motion to withdraw and withdrew Thompson's motion for sanctions for spoliation of evidence (Filing No. 153) from the record (Filing No. 234). The instant Motion followed.

## II.    LEGAL STANDARD

Thompson seeks imposition of sanctions for spoliation of evidence pursuant to the Court's inherent authority (Filing No. 268 at 2). "As part of their inherent authority, district courts may impose sanctions for spoliation of evidence." *O'Connor v. Ford Motor Co.*, 683 F. Supp. 3d 793, 795 (N.D. Ill. 2023) (citing *Greviskes v. Univs. Rsch. Ass'n, Inc.*, 417 F.3d 752, 758–59 (7th Cir. 2005)). "Assessing whether spoliation occurred requires a two-part inquiry." *Malibu Media, LLC v. Tashiro*, No. 13-cv-00205, 2015 WL 2371597, at *11 (S.D. Ind. May 18, 2015).

7

"First, the Seventh Circuit has noted that 'courts have found a spoliation sanction to be proper only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent.'" *Id.* (quoting *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). Accordingly, any sanction for spoliation must follow a finding that the University had a duty to preserve evidence.

"Second, a showing of 'bad faith' is 'a prerequisite to imposing sanctions for the destruction of evidence.'" *Id.* (quoting *Trask-Morton*, 534 F.3d at 681). "'[B]ad faith' means destruction for the purpose of hiding adverse information." *Id.* (quoting *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998) (alteration in original), and citing *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013) ("A party destroys a document in bad faith when it does so for the purpose of hiding adverse information." (citation modified))). Accordingly, a sanction for spoliation may not be imposed solely because evidence was destroyed; rather, such sanctions are appropriate only if the evidence was destroyed for the purpose of hiding adverse information. *See Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002) ("The crucial element is not that the evidence was destroyed but rather the reason for the destruction." (citation modified)).

As the moving party, Thompson bears the burden of proof. *Bracey*, 712 F.3d at 1019 (citing *Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001) (finding that plaintiff could not use destroyed evidence to create genuine issue of material fact where plaintiff "offered no evidence, other than his own speculation, that [the documents] were destroyed to hide" adverse evidence)).

### III.    DISCUSSION

Thompson argues the University destroyed this evidence after she informed it of its obligations to preserve her sexual assault kit and evidence related to her legal claims on not fewer than nine occasions. In her Motion, she requests that the Court sanction the University for

spoliation of the following evidence: (1) Thompson's anonymous sexual assault kit; (2) Thompson's and Officer Ortlieb's IU email accounts; and (3) building access logs in the vicinity of where Thompson was found for the evening of October 12, 2021, and morning of October 13, 2021 (Filing No. 251). Thompson also requests an award of attorney's fees and costs associated with pursuing this Motion and the previously withdrawn motion for sanctions. The University argues that sanctions are not appropriate for the evidence at issue, because under the circumstances here, it did not have a duty to preserve and that there was no bad faith. The Court will address each piece of evidence at issue in turn but will first briefly address the University's timeliness argument.

### A.     Timeliness

The University raises the issue of timeliness of Thompson's Motion (Filing No. 264 at 20 n.9) and asserts that she waited 14 months after receiving full disclosure of the destruction of the sexual assault kit to file her motion. *Id.* Thompson responds that she filed an unopposed motion to withdraw her original motion for sanctions from the record and, in so doing, the University agreed that she could refile her motion within 30 days after the close of non-expert discovery without it raising a timeliness argument (Filing No. 233). The Court granted that motion noting the agreement between the parties (Filing No. 234).

Non-expert discovery closed on June 27, 2025. However, on June 30, 2025, the parties agreed that the renewed motion for spoliation could be filed within 30 days after completion of the last Rule 30(b)(6) deposition (Filing No. 267-4 at 1). On September 19, 2025, Thompson filed the present motion (Filing No. 251). On October 3, 2025, the parties jointly filed a motion for extension of deadlines on briefing on this motion and on the University's motion for summary judgment, which the Court granted (Filing No. 261; Filing No. 262). The Court finds that the

University waived any arguments of untimeliness when it agreed to extend the deadline for Thompson to file her initial brief in support of her motion on June 30, 2025.

**B.      Anonymous Sexual Assault Kit**

Thompson argues that the University had a duty to preserve her sexual assault kit, and the University destroyed it in bad faith (Filing No. 256). In its response, the University contends that the sexual assault kit was not relevant to Thompson's claims against it and that it did not destroy the anonymous sexual assault kit in bad faith (Filing No. 264). The Court will address whether the University had a duty to preserve evidence and then whether the University acted in bad faith, as each element is dispositive.

**1.  Duty to Preserve**

"Parties have a duty to preserve evidence once they know or should know that litigation is imminent." *Hunting Energy Servs., Inc. v. Kavadas*, No. 15-cv-228, 2018 WL 4539818, at *4 (N.D. Ind. Sept. 20, 2018) (citing *Trask-Morton*, 534 F.3d at 681). "When a party first reasonably foresees that litigation is on the horizon, it must suspend its ordinary policies governing how information is retained or destroyed and put into place a litigation hold to preserve relevant material." *Weitzman v. Maywood, Melrose Park, Broadview Sch. Dist. 89*, No. 13 C 1228, 2014 WL 4269074, at *2 (N.D. Ill. Aug. 29, 2014).

However, this duty only applies to relevant evidence. *See Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002) ("Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case."); *see also Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001) ("The prevailing rule [in this circuit] is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction." (citation modified; alteration in original)).

Documents are relevant if a party "reasonably knew or could reasonably foresee [that they were] material to a potential legal action." *United States v. Cmty. Health Network, Inc.*, No. 14-cv-01215, 2023 WL 4761664, at *5 (S.D. Ind. July 26, 2023). Courts do not impose a duty to preserve based on speculation or the remote possibility that evidence may become relevant. *See Crabtree*, 261 F.3d at 721 (upholding district court's decision not to grant adverse inference where irrelevant documents were destroyed); *see also Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985) (same).

The University does not dispute that it had a general preservation duty based on Thompson's Complaint and requests, but rather, argues that the sexual assault kit is not relevant to any issue before the Court (Filing No. 264 at 18). Thompson contends that the six preservation requests she made to the University caused the sexual assault kit to become relevant (Filing No. 268 at 7). She then contends that the Court recognized the sexual assault kit as relevant to the IIED claims in its Order Denying the University's Motion to Dismiss. *Id.* at 8.

The sexual assault kit is not relevant to the claims at issue. The University treated Thompson's allegations of sexual assault as true even without investigating. When the University learned of Thompson's alleged sexual assault, it converted the judicial conference into a wellness meeting and then dropped all charges under the Code and provided Thompson with resources moving forward.

Thompson also acknowledges that she "does not need to prove a sexual assault and/or involuntary drugging occurred to prove her claims" (Filing No. 156 at 16), and the Court agrees. Her claims against the University are based on administrative actions performed after the alleged sexual assault by an unknown party, not the forensic investigation of the assault. Accordingly, whether Thompson was or was not sexually assaulted would not change the outcome of this case.

Other courts in the Seventh Circuit have held that a plaintiff could not sustain a spoliation claim when the destruction of the evidence at issue would not impair its ability to prove its case. *See, e.g.*, *Composites One, LLC v. Acrylon Composites*, No. 05 C 4605, 2007 WL 1175579, at *5 (N.D. Ill. Apr. 18, 2007).

Moreover, Thompson misapplies the Court's Order on the University's Motion to Dismiss. Thompson's Second Amended Complaint alleged that the University not only knew of her anonymous sexual assault kit but obtained the identifying information in violation of HIPAA, and then intentionally destroyed the kit to cause Thompson emotional distress (Filing No. 80 at 37). The Court, taking those allegations as true, as it is required to do on a motion to dismiss, determined that such allegations were sufficient to survive the initial pleading stage (Filing No. 163 at 16). However, following extensive discovery efforts, Thompson has designated no evidence to support her assertions that the anonymous sexual assault kit is relevant.

## 2. Bad Faith

Thompson argues that the University acted in bad faith in the following ways: it received preservation requests and knew or should have determined which kit was hers despite her demands to the contrary; it destroyed the kit outside of its ordinary course of business; and it had an overall pattern consistent with bad faith (Filing No. 256 at 18–29).

Even if the information in Thompson's sexual assault kit was relevant—which it is not—there is no evidence that the University disposed of it in bad faith. As the Court noted earlier, bad faith requires destruction "for the purpose of hiding adverse information." *Mathis*, 136 F.3d at 1155.

First, none of the six preservation requests contained any information that could identify the anonymous sexual assault kit. Only ISP, IUH, Thompson, and her attorneys knew the

12

identifying information. But that information was not provided to the University until after the kit was destroyed.

Second, while Thompson scrutinizes every action the University has taken throughout the case, the evidence does not indicate bad faith. In this case, the Monroe County Prosecutor's Office (via a criminal investigator) ordered the destruction of the sexual assault kit according to its routine administrative procedures. This does not warrant an adverse inference. *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) (denying adverse inference of discrimination when Sears routinely destroyed leadership capability evaluations because they contained confidential information). That a criminal investigator from the Monroe County Prosecutor's Office ordered the destruction of the anonymous sexual assault kit rather than the prosecutor personally is not a material distinction, as the authority of the individuals within the Monroe County Prosecutor's Office is not at issue nor would it change the outcome of this case.

Thompson also focuses on how the University destroyed the kit and contends that the Court should sanction the University because the destruction was suspicious, but she provides no argument concerning how this information would have been adverse to the University. The University accepted Thompson's claim of sexual assault as true, and dismissed all charges against her the same day as the meeting. Regardless of the information contained within the anonymous kit, it would not have been adverse to the University. Accordingly, there is no basis for the Court to find that the University destroyed the anonymous sexual assault kit for the purpose of hiding adverse information, and sanctions are thus not warranted.

C.    **Email Accounts**

Thompson contends that the University intentionally failed to place a litigation hold on her and Officer Ortlieb's email accounts and that it did so in bad faith, resulting in spoliation (Filing

13

No. 256 at 26). The University argues that both email accounts were deleted as part of the ordinary retention/destruction policy on University email accounts that applies when staff, faculty, or students leave the University (Filing No. 264 at 19 n.8).

According to the usual retention policy, 60 days after staff, faculty, or students terminate their affiliation with the University, their email accounts are automatically deleted unless a hold is placed to retain the accounts (Filing No. 257-50 at 3). Thompson separated from the University in December 2021 (Filing No. 264 at 19 n.8). Officer Ortlieb separated from the University in October 2022. *Id.*

Thompson argues that Officer Ortlieb stated in depositions that he regularly used his email account and it therefore likely contained relevant evidence (Filing No. 268 at 11). The University responds that any reports Officer Ortlieb made relative to his interaction with Thompson on October 13, 2021, would have been captured in his official case report (Filing No. 264 at 19 n.8). The University also asserts that any emails to or from Thompson regarding her disciplinary proceeding were retained and produced from the accounts of the University officials who communicated with her during that time frame. *Id.*

The evidence supports that the deletion of these two email accounts occurred as part of the University's normal retention/destruction schedule. Even if the destruction were negligent, the Court does not find that the email accounts were deleted for the purpose of hiding information adverse to the University's position in the current litigation. *See Conner v. Rubin-Asch*, 793 F. App'x 427, 431 (7th Cir. 2019) (finding no bad faith when a defendant failed to provide any evidence that video footage was overwritten to hide illicit conduct). Therefore, the Court finds sanctions for the deletion of these email accounts to be unwarranted.

14

**D.**        **Building Access Logs**

Thompson next argues that a sanction for the spoliation of evidence is warranted for the University's failure to preserve building access logs for the campus buildings near where Thompson was found on October 13, 2021 (Filing No. 256 at 11). Thompson notes that video footage from that night shows her trying to enter a building near where she was found by IUPD. *Id.* She asserts that such attempts had been captured on video and mentioned in IUPD's incident report. *Id.* at 12. Thompson argues that the University should have checked her swipe card history from that evening or preserved it. *Id.* She states that such information could have provided insight into her movements on campus that morning. *Id.* at 18. However, she does not state how such insight would have been different from or supplemental to the video evidence of her movements. Thompson simply asserts that the failure to preserve these access logs interferes with her right to access the courts. *Id.* at 25.

The University states that the building access logs are routinely deleted after 365 days (Filing No. 257-31 at 3). The University contends that Thompson has not described how the loss of this information has hampered her ability to bring any claim to court or to seek judicial remedies (Filing No. 264 at 18 n.5). The Court agrees with the University.

At most, the building access logs would show information duplicative of what is already shown in the retained video footage. Because that information has already been produced by the University, the destruction of the redundant information contained within the building access logs cannot amount to bad faith. *See Coates*, 756 F.2d at 551 (holding no bad faith when incomplete duplications of official personnel files were destroyed but complete official files were produced); *see also S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R.*, 695 F.2d 253, 259 (7th Cir. 1982) (no inference of bad faith when original notes subsequently summarized in preserved

memorandum were destroyed). In the absence of bad faith, spoliation is not present, and sanctions are not proper. *See Conner*, 793 F. App'x at 431. The Court concludes that the deletion of the building access log information was not done in bad faith and sanctions are not warranted.

**E.      Attorney's Fees**

Thompson also seeks an award of attorney's fees incurred in bringing her Motion. The award of attorney fees is allowable only if a party is successful in her motion for sanctions. *Fuery v. City of Chicago*, 900 F.3d 450, 468–69 (7th Cir. 2018) (finding court's inherent authority allowed award of attorneys' fees for bringing successful sanctions motion). Here, Thompson is not successful in her Motion. Accordingly, the Court **denies** her request for attorney's fees.

## IV.      CONCLUSION

Thompson has not shown that the unpreserved evidence was relevant to her Title VI and Title IX claims, or her state law claim of Intentional Infliction of Emotional Distress. Nor has she shown that the evidence was destroyed in bad faith.  For the reasons discussed above, the Motion for Sanctions for Spoliation of Evidence (Filing No. 251), is **DENIED**.

      **SO ORDERED**.

      Date:    4/20/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Sandra L. Blevins
Betz & Blevins
sblevins@betzadvocates.com

Courtney E. Endwright
BETZ & BLEVINS
cendwright@betzadvocates.com

Amanda Jane Gallagher
Barnes & Thornburg LLP
Amanda.Gallagher@btlaw.com

Jamie A. Maddox
BETZ & ASSOCIATES
jmaddox@betzadvocates.com

John R. Maley
BARNES & THORNBURG, LLP (Indianapolis)
jmaley@btlaw.com

Dylan Pittman
BARNES & THORNBURG, LLP (Indianapolis)
dylan.pittman@btlaw.com

Harley Brianna Schmitt
Betz & Blevins
hschmitt@betzadvocates.com

Charity Seaborn
Barnes & Thornburg LLP
Charity.Seaborn@btlaw.com